# Illinois Official Reports

## Appellate Court

---

### *Bank of America, N.A. v. Adeyiga*, 2014 IL App (1st) 131252

---

| | |
|---|---|
| Appellate Court Caption | BANK OF AMERICA, N.A., Plaintiff-Appellee, v. OLUFEMI A. ADEYIGA and BOLA E. ADEYIGA, Defendants-Appellants. |
| District & No. | First District, Fifth Division<br>Docket No. 1-13-1252 |
| Filed<br>Rehearing denied | September 30, 2014<br>April 8, 2015 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | A mortgage foreclosure proceeding was remanded to the trial court for an evidentiary hearing to determine whether the grace period notice was sent to defendants and whether plaintiff bank waited past 30 days to file its foreclosure complaint, and if no such notice was sent, the confirmation of the judicial sale and all subsequent orders would be deemed an abuse of discretion by the trial court and would require the vacation of the judicial sale and dismissal of the case. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 11-CH-2979; the Hon. Mathias Delort, Judge, presiding. |
| Judgment | Remanded for an evidentiary hearing. |

Counsel on
Appeal

Robert D. Shearer, Jr., of Chicago, for appellants.

Phoebe N. Coddington and Robine K. Morrison, both of Winston & Strawn LLP, of Chicago, for appellee.

Panel

JUSTICE GORDON delivered the judgment of the court, with opinion.
Presiding Justice Palmer and Justice McBride concurred in the judgment and opinion.

**OPINION**

¶ 1     This is a case of first impression.

¶ 2     On January 24, 2011, BAC Home Loans Servicing, LP, f/k/a Countrywide Home Loans Servicing, LP (BAC), brought this mortgage foreclosure action against defendants Olufemi A. Adeyiga (Olufemi) and Bola E. Adeyiga (Bola), his wife. Bank of America, N.A. (Bank), was later substituted as plaintiff after it merged with BAC and became its successor.

¶ 3     On December 8, 2011, the trial court denied Olufemi and Bola's motion to dismiss and granted the Bank's motions: (1) for summary judgment against Olufemi; (2) for default against Bola; and (3) for judgment of foreclosure pursuant to the Illinois Mortgage Foreclosure Law (the Foreclosure Law) (735 ILCS 5/15-1101 *et seq.* (West 2010)).

¶ 4     On this direct appeal, Olufemi and Bola raise, essentially, three issues: (1) whether the Bank has standing; (2) whether the Bank committed fraud when it concealed that BAC did not have standing when it filed its complaint; and (3) whether the trial court erred in denying Olufemi and Bola's motion to dismiss based upon the Bank's failure to send a "grace period notice" as required by section 15-1502.5 of the Foreclosure Law, which is commonly known as the Homeowner Protection Act.[1]  735 ILCS 5/15-1502.5 (West 2010).

¶ 5     Since there is no evidence in the record that the Bank sent a grace period notice prior to filing its complaint, which is required before any foreclosure action may be instituted under the Foreclosure Law, by sections 15-1502.5(b) and (c) of the Foreclosure Law (735 ILCS 5/15-1502.5(b), (c) (West 2010)), we remand to the trial court to determine in an evidentiary hearing whether the grace period notice was sent. If the trial court finds that no grace period notice was sent, then we find that: (1) the trial court abused its discretion in confirming the judicial sale and all subsequent orders; (2) and in that event, the judicial sale must be vacated in accordance with section 15-1508(b) of the Foreclosure Law (735 ILCS 5/15-1508(b)

_____

[1]Section 15-1502.5 of the Foreclosure Law is a temporary provision that is scheduled to expire on July 1, 2016. 735 ILCS 5/15-1502.5(k) (West 2012).

(West 2010)); and (3) the case must be dismissed. If the trial court finds that a grace period notice was sent, but plaintiff did not wait 30 days to file its lawsuit, we find that: (1) the trial court abused its discretion in confirming the judicial sale and all subsequent orders; (2) and in that event, the judicial sale must be vacated in accordance with section 15-1508(b) of the Foreclosure Law (735 ILCS 5/15-1508(b) (West 2010)); and (3) the case must be dismissed. If the trial court finds that a grace period notice was sent and plaintiff waited 30 days before filing suit, then the judgment of the trial court is affirmed.

¶ 6                                BACKGROUND
¶ 7                              I. The Complaint
¶ 8        Olufemi and Bola are the mortgagors of an owner-occupied, single-family, residential property located in Lansing, Illinois. The mortgage was executed on February 2, 2007. The mortgage defines defendants as the borrowers, Aegis Wholesale Corporation (Aegis) as the lender, and "Mortgage Electronic Registration Systems" (MERS) as the mortgagee. The note secured by the mortgage provided that the lender could transfer the note and that anyone who received the note by transfer was entitled to receive payments under the note. The mortgage and promissory note were attached to the complaint.

¶ 9        On January 24, 2011, BAC filed a verified complaint to foreclose the mortgage, alleging that Olufemi, Bola, and "unknown owners and nonrecord claimants" were in default of the mortgage loan in the amount of $123,368.29 in unpaid principal, interest, costs, advances and fees. The complaint alleged that Olufemi and Bola had not paid the monthly installments of principal, interest, taxes, and insurance since December 1, 2009.

¶ 10       Paragraph 3(N) of the complaint states: "Capacity in which Plaintiff brings this foreclosure: Plaintiff is the Mortgagee under 735 ILCS 5/15-1208 [(West 2010)]." Section 15-1208 of the Foreclosure Law reads:

    " 'Mortgagee' means (i) the holder of an indebtedness or obligee of a non-monetary obligation secured by a mortgage or any person designated or authorized to act on behalf of such holder and (ii) any person claiming through a mortgagee as successor." 735 ILCS 5/15-1208 (West 2010).

¶ 11       The complaint did not allege that the Bank had mailed a grace period notice, which is required before any foreclosure action may be instituted. 735 ILCS 5/15-1502.5(b), (c) (West 2010).

¶ 12       On November 24, 2010, the trial court appointed ProVest LLC to serve process. In an affidavit dated February 7, 2011, Darletha Smith, an employee of ProVest, stated that she had personally served Olufemi on January 26, 2011, at the subject property, and had served Bola by substitute service on the same date, by giving Olufemi a copy of the complaint and summons at the subject property.

¶ 13                         II. Defendants' *Pro se* Filings
¶ 14       On February 8, 2011, Olufemi filed a *pro se* appearance and verified answer. In his answer, Olufemi listed under "other affirmative matter," that: "[Paragraph] 3(N)–The note was not endorsed and no assignment or allonge was attached or recorded."

¶ 15       On March 18, 2011, Olufemi filed three *pro se* discovery motions: (1) a request to produce pursuant to Illinois Supreme Court Rule 214 (eff. Jan. 1, 1996); (2) Illinois Supreme

Court Rule 213 (eff. Jan. 1, 2007) written interrogatories; and (3) a request to admit pursuant to Illinois Supreme Court Rule 216 (eff. Jan. 1, 2011). On that same date, Olufemi filed a *pro se* motion for leave to file *instanter*: (1) an amended appearance with a jury demand; (2) an amended answer to the Bank's complaint; and (3) an affirmative defense and counterclaim. Also on March 18, 2011, Olufemi filed an amended appearance with a jury demand, an amended answer, an affirmative defense and counterclaim, and a motion for leave to file a change of address *instanter*.

¶ 16    On March 25, 2011, the trial court ordered that: (1) Olufemi's motion to file an amended answer, affirmative defenses, jury demand and counterclaim was denied without prejudice, finding they were not appropriate; (2) all discovery would be stayed pending further review of the court and that the court would consider opening discovery "when and if Olufemi meaningfully participates" in the Cook County mediation program; (3) the request for production of documents, interrogatories and request to admit facts were stricken; and (4) both Olufemi and Bola forfeited their right to bring a motion to quash service by virtue of Olufemi filing an answer and substantive motion.

¶ 17    In support of its order, the trial court noted that, although Olufemi should be given "liberal authority" to amend his answer and file new affirmative defenses and counterclaims, "the court is unwilling to do so at this time" because his proposed amended pleadings were prepared in such a haphazard way that they would "unduly burden the plaintiff in any attempt to meaningfully respond to them." It then cited several aspects of the documents, calling them "inexplicable," "confusing" and "bizarre." The trial court stated that it was clear that the documents had been prepared by someone unlicensed to practice law and that Olufemi himself did not understand their nature or content.

¶ 18                          III. The Bank's Motion for Summary Judgment

¶ 19    On September 22, 2011, BAC filed a motion to substitute the Bank, successor by merger to BAC, as plaintiff. The motion claimed that, subsequent to BAC filing the complaint on January 24, 2011, BAC merged with the Bank. The trial court granted the motion on December 8, 2011.

¶ 20    Also on September 22, 2011, the Bank filed a motion for summary judgment pursuant to section 2-1005 of the Code of Civil Procedure (735 ILCS 5/2-1005 (West 2010)). In support of its motion, the Bank asserted in an affidavit that Olufemi's general denials and affirmative defenses, as pleaded, "fail to sufficiently set forth facts and supporting documentation which tend to indicate that a genuine issue of material fact exists." Further, the Bank asserted that Olufemi failed to submit any counteraffidavit refuting the facts contained in its affidavit in support of its motion for summary judgment. The Bank requested: (1) an entry of an order of summary judgment; and (2) the entry of a judgment of foreclosure and sale.

¶ 21    Attached to the Bank's motion for summary judgment was: (1) the affidavit of Acee Fuller, Jr.; and (2) a certificate of prove-up of foreclosure fees and costs.

¶ 22    Fuller's affidavit stated that, according to the Bank's records for "the Loan," Olufemi and Bola "defaulted by failing to make required payments" and that, as of July 1, 2011, the amount in default was $142,995.92. The itemized sums of money included: the principal balance of $132,638.29; interest due through July 1, 2011, of $13,136.30; escrow advance total of $6,532.60; and additional fees and credits. Attached to Fuller's affidavit was a

printout of the business records regarding the loan that were maintained electronically by the Bank.

¶ 23    The attached certificate of prove-up of foreclosure fees and costs listed costs and expenses incurred by the Bank, including filing fees, service of summons, recording costs, title charges and foreclosure attorney fees, totaling $2,225, which the Bank stated "ought to be assessed as costs and expenses as provided in the subject mortgage and note."

¶ 24    IV. Defendants' Response to the Bank's Motion for Summary Judgment

¶ 25    Olufemi and Bola retained attorneys from the Illinois Foreclosure Defense, LLC, who filed, on November 9, 2011, a response in opposition to the Bank's motion for summary judgment and a motion to dismiss pursuant to section 2-619 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619 (West 2010)) that included the same subject matter.

¶ 26    In their response, defendants argued that the motion for summary judgment should be denied because there were questions of material fact that could not be answered by the pleading and affidavits submitted, including whether the mortgagee is authorized to sue for foreclosure. Specifically, defendants argued that the Bank had not met its burden of proof to show that it had mailed a grace period notice prior to the filing of the complaint, which is required by sections 15-1502.5(b) and (c) of the Foreclosure Law (735 ILCS 5/15-1502.5(b), (c) (West 2010)). Attached to the response were the affidavits of Olufemi and Bola. Each stated that they signed the note and mortgage provided by Aegis in February 2007, and that Aegis was the holder of the note and mortgage on the property at that time. Both Olufemi and Bola stated that they did not receive a notice of default or a grace period notice.

¶ 27    Defendants' response also contested plaintiff's allegation that it is the holder of the note and the mortgagee under section 15-1208 of the Foreclosure Law (735 ILCS 5/15-1208 (West 2010)), arguing that the original plaintiff, BAC, was not the mortgagee on January 24, 2011, because the assignment of mortgage to BAC was not recorded with the Cook County recorder of deeds until January 31, 2011, and therefore it did not own the note or mortgage attached to its complaint. Defendants argued that, as a result, plaintiff lacked standing to bring the foreclosure action because plaintiff did not establish that on the day the mortgage was filed it was the mortgagee under section 15-1208 of the Foreclosure Law (735 ILCS 5/15-1208 (West 2010)), which defines a mortgagee as a "holder of an indebtedness or obligee of a non-monetary obligation secured by a mortgage" or "any person claiming through a mortgagee as successor," because it did not produce any assignment of mortgage on the date of filing.

¶ 28    Also, defendants contested plaintiff's allegation that it presented its motion for summary judgment to the court with an affidavit of mortgage in accordance with Illinois Supreme Court Rule 191(a) (eff. July 1, 2002). Defendants argued that Fuller's affidavit does not meet the requirements of Rule 191(a) because the affiant does not attest to personal knowledge of the facts he recites but, rather, states: "by persons with personal knowledge of the information in the business record, or form information transmitted by persons with personal knowledge." Defendants thus concluded that the affiant's assertions are hearsay and not based on personal knowledge. They further asserted that the affidavit is defective because it was notarized on August 16, 2011, seven months after the foreclosure complaint was filed.

¶ 29    On November 28, 2011, Olufemi and Bola's attorneys, Illinois Foreclosure Defense, LLC, filed a motion to withdraw their appearance for Olufemi and Bola. On December 14,

- 5 -

2011, the trial court granted the attorneys leave to withdraw their representation.

¶ 30                    V. The Bank's Reply to the Motion to Dismiss

¶ 31    On November 22, 2011, the Bank filed its reply and did not deny that it failed to send the grace period notice. The Bank argued that since Olufemi did not raise a defense with regard to failure to send a grace period notice in his answer, and Bola filed no answer, they had admitted to receiving the grace period notice. It further argued that it was improper for Olufemi and Bola to raise the claim that a grace period notice was not sent in a motion to dismiss, as the claim "merely refutes a well-plead [*sic*] allegation of the Complaint."[2]

¶ 32                    VI. The Trial Court's Judgment on December 8, 2011

¶ 33    On December 8, 2011, the trial court: (1) denied the motion to dismiss; (2) granted summary judgment against Olufemi; (3) entered an order of default against Bola; and (4) entered a judgment of foreclosure and sale. In its order, the trial court considered defendants' claim that the plaintiff lacked standing and found that defendants waived the argument since Olufemi did not plead lack of standing as an affirmative defense in his answer.[3] The trial court also stated that, even if defendants did not waive the argument, they did not prove that the Bank lacked standing because the fact that the assignment of the mortgage had not been recorded until after the present case was filed was "not problematic."

¶ 34    In a written judgment order, the trial court responded to Olufemi and Bola's claim in their response to the Bank's motion for summary judgment that the Bank did not mail the grace period notice required by section 15-1502.5 of the Foreclosure Law (735 ILCS 5/15-1502.5 (West 2010)) and therefore did not meet the condition precedent for filing the present suit.

¶ 35    In its decision-making process, the trial court found that section 15-1504(c) of the Foreclosure Law states that, if the Bank used "substantially" the specified form complaint, set out in section 15-1504(a), the complaint should be construed to include 12 additional statutorily specified allegations, including "that any and all notices of default or election to declare the indebtedness due and payable or *other notices required to be given* have been duly and properly given." (Emphasis added.) 735 ILCS 5/15-1504(a), (c), (c)(9) (West 2010). Citing U.S. Bank, N.A. v. Olavarria, No. 10-CH-32532 (Cir. Ct. Cook Co.), the trial court stated that the grace period notice required by section 15-1502.5 of the Foreclosure Law is covered by the statutory language "other notices required to be given," and the notices were deemed given.

¶ 36    Section 15-1504(a) provides the following form complaint, which was followed by the original plaintiff, BAC, in its complaint:

> "(a) Form of Complaint. A foreclosure complaint may be in substantially the following form:

---

[2]There was no such written allegation in the complaint.

[3]The trial court did not clarify why Olufemi's statement in his answer was insufficient to raise the affirmative defense of lack of standing. Olufemi stated under "other affirmative matters," that: "[Section] 3(N)–The note was not endorsed and no assignment or allonge was attached or recorded." This referred to plaintiff's statement of capacity in its complaint.

- 6 -

(1) Plaintiff files this complaint to foreclose the mortgage (or other conveyance in the nature of a mortgage) (hereinafter called 'mortgage') hereinafter described and joins the following person as defendants: (here insert names of all defendants).

(2) Attached as Exhibit 'A' is a copy of the mortgage and as Exhibit 'B' is a copy of the note secured thereby.

(3) Information concerning mortgage:

(A) Nature of instrument: ***

(B) Date of mortgage:

(C) Name of mortgagor:

(D) Name of mortgagee:

(E) Date and place of recording:

(F) Identification of recording: ***

(G) Interest subject to the mortgage: ***

(H) Amount of original indebtedness *** :

(I) Both the legal description of the mortgaged real estate and the common address ***:

(J) Statement as to defaults *** :

(K) Name of present owner of the real estate:

(L) Names of other persons who are joined as defendants and whose interest in or lien on the mortgaged real estate is sought to be terminated:

(M) Names of defendants claimed to be personally liable for deficiency, if any:

(N) Capacity in which plaintiff brings this foreclosure *** :

(O) Facts in support of redemption period *** :

(P) Statement that the right of redemption has been waived by all owners of redemption, if applicable:

(Q) Facts in support of request for attorneys' fees and of costs and expenses, if applicable:

(R) Facts in support of a request for appointment of mortgagee in possession or for appointment of receiver, and identity of such receiver, if sought:

(S) Offer to mortgagor in accordance with Section 15-1402 to accept title to the real estate in satisfaction of all indebtedness and obligations secured by the mortgage without judicial sale, if sought:

(T) Name or names of defendants whose right to possess the mortgaged real estate, after the confirmation of a foreclosure sale, is sought to be terminated and, if not elsewhere stated, the facts in support thereof[.]" 735 ILCS 5/15-1504(a) (West 2010).

Accordingly, the trial court found that the complaint was "substantially" in the form provided in section 15-1504(a) of the Foreclosure Law (735 ILCS 5/15-1504(a) (West 2010)), and therefore the complaint included the "deemed" allegation that "other notices required to be

given" had been given, which the trial court held to include a grace period notice. Thus, the court found that Olufemi and Bola admitted that grace period notice was sent, because Olufemi did not address the grace period notice in his answer, and Bola made no answer at all. Thus, the trial court found that the Bank was not required to present evidence regarding the grace period notice.

¶ 37    The trial court also responded to Olufemi and Bola's claim that the affidavit attached to the Bank's motion for summary judgment did not meet the requirements of Illinois Supreme Court Rule 191(a) (eff. July 1, 2002), because it was not made based on the personal knowledge of the affiant. The trial court noted that the affiant stated that he had personal knowledge of the procedures for creating the records discussed in the affidavit, and that, considering the statements of the affidavit as a whole, the affidavit satisfies the business records exception to the hearsay rule enunciated in *Champaign National Bank v. Babcock*, 273 Ill. App. 3d. 292, 298 (1995).

¶ 38    Accordingly, the trial court found that Olufemi and Bola's arguments did not raise a genuine issue of material fact and granted summary judgment in favor of the Bank.

¶ 39    The trial court then turned to Olufemi and Bola's motion to dismiss, stating that it was premised "solely" on the claim that the Bank failed to send a grace period notice as required by section 15-1502.5 of the Foreclosure Law. The trial court stated that, as it had previously observed, Olufemi and Bola had admitted in effect that the grace period notice was sent, and any further argument had been waived, when the Olufemi's answer failed to bring up the claim that no grace period notice was sent. Further, the trial court noted that "the time for filing a motion to dismiss as a responsive pleading is long passed," because the case stood before the court on a fully briefed motion for summary judgment. The trial court accordingly denied Olufemi and Bola's motion to dismiss.

¶ 40                          VII. Defendants' Motion to Vacate

¶ 41    On March 3, 2012, the Bank sent a notice of sale to Olufemi and Bola, specifying the date of public auction on April 10, 2012. On March 23, 2012, the trial court granted Olufemi and Bola's motion to stay the sale until April 26, 2012.

¶ 42    On March 23, 2012, by and through his new attorney, Robert D. Shearer, Jr., who entered an appearance on that same date, Olufemi filed an emergency section 2-1301 motion to vacate the judgment of foreclosure, the sale, the confirmation of sale, and the order for possession based on unclean hands, bad faith, unfair dealing and fraud upon the court. 735 ILCS 5/2-1301 (West 2010). However, on April 6, 2012, the motion was voluntarily withdrawn and the trial court granted Shearer leave to file an additional appearance for Olufemi and Bola and to reply during the period in which the sale was stayed, ending on April 26, 2012.

¶ 43    On April 24, 2012, Olufemi and Bola filed a motion to vacate the summary judgment, order of default, and the judgment of foreclosure and sale, pursuant to section 2-1301 of the Code of Civil Procedure (735 ILCS 5/2-1301 (West 2010)). The motion argued that the judgment orders must be vacated because the Bank lacked standing and therefore the trial court lacked subject matter jurisdiction to enter the orders. Olufemi and Bola presented three alternative reasons why the original plaintiff, BAC, lacked standing: (1) when Aegis was dissolved on August 13, 2007, by the United States Bankruptcy Court for the District of Delaware, its principal-agency relationship with MERS was terminated and, therefore, the

purported assignment of Aegis's interest in the subject mortgage to BAC was void; or (2) in the alternative, BAC lacked standing because it did not hold title to both the promissory note and mortgage, nor was it a nominee of an entity that held both interests; or (3) in the alternative, the purported assignment of the interest in the mortgage by MERS to BAC was invalid because it was created by an attorney representing BAC, not an independent agent of MERS.

¶ 44    Attached to Olufemi and Bola's motion was the affidavit of Tony Hernandez, who testified that he engaged in research pertaining to the present suit. Hernandez stated that during his research he discovered that the assignment of the mortgage from MERS, as nominee for Aegis, to BAC, the original plaintiff, purports to have an authorized signer for MERS named William McAllister. He stated that there are six people named William McAllister in the State of Illinois, and only one had a connection with MERS, and that William McAllister is a supervising attorney for Codilis & Associates, P.C. (Codilis), which is counsel for the Bank. He stated that, based on his research and the verbiage of the assignment documents, the assignment was created by Codilis and signed by McAllister, "which may present a quandary for all parties as it appears that the foreclosing attorney has prepared evidence in favor of its defunct client BAC." He stated that this might be a violation of the "Code of Ethical Conduct" for attorneys. The assignment was also attached to Olufemi and Bola's motion.

¶ 45    On July 31, 2012, the trial court denied Olufemi and Bola's motion to vacate, "the court explaining its reasoning before a court reporter." However, this transcript is not in the appellate record.

¶ 46    On August 30, 2012, Olufemi and Bola filed a motion for reconsideration of the trial court's July 31, 2012, judgment order denying Olufemi and Bola's motion to vacate the summary judgment and judgment of foreclosure and sale. The motion argued that the trial court erred in its application of existing law when it denied its motion to vacate; again raising the argument that the original plaintiff, BAC, lacked standing when it filed its complaint, and further arguing that the Bank had fraudulently concealed that fact from the court. Therefore, Olufemi and Bola concluded that their motion to vacate should be granted, and accordingly, the trial court's entry of summary judgment and judgment of foreclosure and sale in favor of the Bank should be vacated. On September 21, 2012, following a hearing, the trial court denied Olufemi and Bola's motion for reconsideration.

¶ 47    On October 23, 2012, the Bank filed a motion for an order approving the report of sale and distribution. The report of sale and distribution stated that on September 10, 2012, and continued to October 15, 2012, the subject property was sold at public auction to the highest bidder for cash. The Bank offered a bid of $159,543.56, and that being the highest bid, the Judicial Sales Corporation sold the subject property to it. The Bank also attached to its motion the certificate of sale signed by the Judicial Sales Corporation on October 15, 2012.

¶ 48    On December 20, 2012, the trial court entered an order approving the report of sale and distribution, and confirming the sale and the order of possession. The court further ordered that the successful bidder, any insurers, investors and agents of the Bank "are entitled to and shall have possession" 60 days after the entry of the order.

¶ 49    On January 3, 2013, Olufemi and Bola filed a notice of appeal, and this direct appeal followed.

¶ 50                                    ANALYSIS

¶ 51        On this direct appeal, Olufemi and Bola raise, essentially, three issues: (1) whether the Bank has standing; (2) whether the Bank committed fraud on the court when it concealed that BAC did not have standing when it filed its complaint; and (3) whether the trial court erred when it found that Olufemi and Bola admitted in effect to receiving a grace period notice by failing to deny an unstated allegation in the Bank's complaint that such notice had been sent.

¶ 52        Since there is no evidence in the record that the Bank sent a grace period notice prior to filing its complaint, which is required before any foreclosure action may be instituted under the Foreclosure Law, by sections 15-1502.5(b) and (c) of the Foreclosure Law (735 ILCS 5/15-1502.5(b), (c) (West 2010)), we remand to the trial court to determine in an evidentiary hearing whether the grace period notice was sent. If the trial court finds that no grace period notice was sent, then we find that the trial court abused its discretion in confirming the judicial sale and all subsequent orders, the judicial sale must be vacated in accordance with section 15-1508(b) of the Foreclosure Law, and the case must be dismissed. 735 ILCS 5/15-1508(b) (West 2010).


¶ 53                              I. Standard of Review

¶ 54        On appeal, Olufemi and Bola ask us to reverse the trial court's order granting the Bank's motion for summary judgment and the denial of Olufemi and Bola's motion to dismiss, filed pursuant to section 2-619 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619 (West 2010)). The purpose of summary judgment is not to try an issue of fact, but to determine whether a triable issue of fact exists. *Robidoux v. Oliphant*, 201 Ill. 2d 324, 335 (2002); *Schrager v. North Community Bank*, 328 Ill. App. 3d 696, 708 (2002). "Although a plaintiff is not required to prove his [or her] case at the summary judgment stage, in order to survive a motion for summary judgment, the nonmoving party must present a factual basis that would arguably entitle the party to a judgment." *Robidoux*, 201 Ill. 2d at 335.

¶ 55        A trial court is permitted to grant summary judgment only "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2010). The trial court must consider documents and exhibits filed in support of or opposition to a motion for summary judgment in the light most favorable to the nonmoving party. *Home Insurance Co. v. Cincinnati Insurance Co.*, 213 Ill. 2d 307, 315 (2004); see also *Espinoza v. Elgin, Joliet & Eastern Ry. Co.*, 165 Ill. 2d 107, 113 (1995) (a court "must construe [documents and exhibits] strictly against the movant and liberally in favor of the nonmoving party"). Summary judgment is a drastic measure and should be granted only if the movant's right to judgment is clear and free from doubt. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102 (1992).

¶ 56        We review a trial court's decision on a motion for summary judgment *de novo*. *Outboard Marine Corp.*, 154 Ill. 2d at 102; *Hernandez v. Alexian Brothers Health System*, 384 Ill. App. 3d 510, 519 (2008). Under the *de novo* standard of review, the reviewing court does not need to defer to the trial court's judgment or reasoning. *People v. Vincent*, 226 Ill. 2d 1, 14 (2007). *De novo* review is completely independent of the trial court's decision. *United States Steel Corp. v. Illinois Pollution Control Board*, 384 Ill. App. 3d 457, 461 (2008). *De novo* consideration means that the reviewing court performs the same analysis that a trial judge would perform. *Khan v. BDO Seidman, LLP*, 408 Ill. App. 3d 564, 578 (2011).

¶ 57    "A motion to dismiss, pursuant to section 2-619 of the Code, admits the legal sufficiency of the plaintiffs' complaint, but asserts an affirmative defense or other matter that avoids or defeats the plaintiffs' claim." *DeLuna v. Burciaga*, 223 Ill. 2d 49, 59 (2006); *Solaia Technology, LLC v. Specialty Publishing Co.*, 221 Ill. 2d 558, 578-79 (2006). When reviewing a section 2-619 motion to dismiss, "a court must accept as true all well-pleaded facts in plaintiffs' complaint and all inferences that can reasonably be drawn in plaintiffs' favor." *Morr-Fitz, Inc. v. Blagojevich*, 231 Ill. 2d 474, 488 (2008). "In ruling on a motion to dismiss under section 2-619, the trial court may consider pleadings, depositions, and affidavits." *Raintree Homes, Inc. v. Village of Long Grove*, 209 Ill. 2d 248, 262 (2004). We review a court's ruling on a motion to dismiss *de novo. Solaia Technology, LLC v. Specialty Publishing Co.*, 221 Ill. 2d 558, 579 (2006); *Blagojevich*, 231 Ill. 2d at 488.

¶ 58                                    II. Standing

¶ 59    Olufemi and Bola first argue that the Bank lacked standing to file a foreclosure action, arguing that: (1) MERS did not have the authority to assign the mortgage to BAC because MERS' agency powers terminated when Aegis was dissolved in bankruptcy court on August 13, 2007; (2) MERS never received title to the promissory note and could not assign it to BAC; and (3) BAC did not hold the promissory note and mortgage when the foreclosure lawsuit was filed on January 20, 2011. In response, the Bank argues that Olufemi and Bola waived the issue since Olufemi did not raise it as an affirmative and Bola did not file an answer, and that, even if the issue was not waived, the Bank sufficiently proved that it had standing to sue.

¶ 60                                     A. Waiver

¶ 61    When a plaintiff lacks standing in a foreclosure action, the trial court's entry of summary judgment and orders of foreclosure and sale are improper as a matter of law. *Bayview Loan Servicing, L.L.C. v. Nelson*, 382 Ill. App. 3d 1184, 1188 (2008). "The doctrine of standing is designed to preclude persons who have no interest in a controversy from bringing suit" and "assures that issues are raised only by those parties with a real interest in the outcome of the controversy." *Glisson v. City of Marion*, 188 Ill. 2d 211, 221 (1999). "[S]tanding requires some injury in fact to a legally cognizable interest ***." *Glisson*, 188 Ill. 2d at 221. Our Illinois Supreme Court has stated that the "lack of standing in a civil case is an affirmative defense, which will be forfeited if not raised in a timely fashion in the trial court." *Greer v. Illinois Housing Development Authority*, 122 Ill. 2d 462, 508 (1988); *People v. Kelly*, 397 Ill. App. 3d 232 (2009). As an affirmative defense, the lack of standing is the defendant's burden to plead and prove. *Lebron v. Gottlieb Memorial Hospital*, 237 Ill. 2d 217, 252-53 (2010).

¶ 62    In its order for summary judgment, the court rejected Olufemi's argument that the Bank lacked standing, because he did not plead lack of standing as an affirmative defense in his answer and, therefore, the argument was waived. On appeal, the Bank relies on the reasoning of the trial court, arguing that Olufemi and Bola have waived the argument that the Bank lacks standing. The Bank relies on *Mortgage Electronic Registration Systems, Inc. v. Barnes*, 406 Ill. App. 3d 1, 6-7 (2010), which found that when a defendant mortgagor fails to argue a lack of standing before a foreclosure judgment, that argument is forfeited and the defendant is barred from litigating the issue later.

¶ 63    However, Olufemi did plead lack of standing as an affirmative defense in his answer. Because his motion for leave to file an amended answer was denied, the only answer on file is his original *pro se* answer. His *pro se* answer states under "other affirmative matter," the following: "3(N)–The note was not endorsed and no assignment or allonge was attached or recorded." Section 3(N) of the complaint, to which the answer refers, states that: "Capacity in which Plaintiff brings this foreclosure: Plaintiff is the Mortgagee under 735 ILCS 5/15-1208."

¶ 64    Section 2-603(c) of the Code provides that "pleadings shall be liberally construed with a view to doing substantial justice between the parties." 735 ILCS 5/2-603(c) (West 2010). Construing Olufemi's answer with the view of doing substantial justice, we find that Olufemi adequately pled standing in his answer such that the argument has not been waived, and we will address each of defendants' arguments in turn.

¶ 65                                B. Dissolution of Aegis

¶ 66    Olufemi and Bola first argue that the dissolution of the original lender, Aegis, terminated MERS' agency powers as to the assignment of the mortgage and consequently the assignment of Aegis's interest in the mortgage to BAC was rendered void. Olufemi and Bola claim that, on August 13, 2007, Aegis was dissolved by the United States Bankruptcy Court for the District of Delaware pursuant to Title 11 of chapter 11 of the United States Code, and that the principal-agency relationship between MERS and Aegis terminated on that day. As a result, Olufemi and Bola argue that MERS no longer had the agency power to assign Aegis's interest in the mortgage to BAC on January 20, 2011, and that the Bank does not have standing because that assignment was void.

¶ 67    To establish a *prima facie* case of foreclosure in accordance with section 15-1504, a plaintiff is required to introduce evidence of the mortgage and promissory note, at which time the burden of proof shifts to the defendant to prove any affirmative defenses. *Farm Credit Bank of St. Louis v. Biethman*, 262 Ill. App. 3d 614, 622 (1994). Section 15-1504 does not require that a foreclosure be filed by the *owner* of the note and mortgage, and instead states that the legal *holder* of the indebtedness, a pledge, an agent, or a trustee may file the lawsuit. 735 ILCS 5/15-1504(a)(3)(N) (West 2010).

¶ 68    In the instant case, the Bank met the requirements to maintain a foreclosure action because it filed copies of the mortgage and note attached to the complaint. In its motion for summary judgment, the Bank attachment an affidavit of Acee Fuller, an officer of the Bank, who stated that BAC holds the promissory note and that the Bank is successor by merger to BAC. The Bank also submitted a copy of the assignment from MERS to BAC, which was signed and notarized prior to the filing of the instant action.

¶ 69    Once the Bank filed its motion for summary judgment with its supporting affidavits, the burden shifted to Olufemi and Bola to prove that there was no genuine issue of material fact. *In re Marriage of Palacios*, 275 Ill. App. 3d 561, 568 (1995) ("The mere suggestion that a genuine issue of material fact exists, without supporting documentation does not create an issue of material fact precluding summary judgment."); *Prather v. Decatur Memorial Hospital*, 95 Ill. App. 3d 470, 472 (1981) ("Where facts contained in an affidavit in support of a motion for summary judgment are not contradicted by counteraffidavit, such facts are admitted and must be taken as true.").

¶ 70    Here, the only evidence that Olufemi and Bola presented in favor of their argument was a one-page Internet printout reporting that the United State Bankruptcy Court for the District of Delaware entered a chapter 11 order on August 13, 2007, which is insufficient to prove that the Bank lacked standing since it says nothing concerning what happened to the assets and liabilities following Aegis's purported dissolution. Furthermore, Olufemi and Bola's brief does not cite to any additional facts in the appellate record and does not cite to any case law beyond the general rule that an agent's authority does not extend beyond the dissolution of the principal. As a result, Olufemi and Bola failed to prove that the Bank lacked standing, and the trial court's rejection of this argument was not improper, and the trial court did not err in granting the Bank's motion for summary judgment and denying Olufemi and Bola's motion to dismiss.

¶ 71                              C. MERS' Agency Powers

¶ 72    Olufemi and Bola next argue that MERS, the original mortgagee, could not assign the debt instrument from the original lender, Aegis, to BAC because MERS never received title to the promissory note. Olufemi and Bola claim that MERS is a private corporation that merely tracks the transfer of ownership interests and servicing rights to mortgage loans, and that MERS has no independent right to collect on any debt since MERS itself does not extend credit and mortgage debtors do not owe it money. As a result, Olufemi and Bola argue that, since there was no evidence in the mortgage documents attached to the foreclosure complaint that demonstrated that MERS held the promissory note or was given authority by Aegis to assign the note to BAC, the assignment on January 20, 2011, was void and the Bank does not have standing.

¶ 73    However, as we have explained, the Bank filed an affidavit of Acee Fuller, an officer of the Bank, who stated that BAC holds the promissory note and that the Bank is successor by merger to BAC. In addition, the Bank has a copy of the assignment from MERS to BAC, which was signed and notarized prior to the instant lawsuit. The burden then shifted to Olufemi and Bola to prove that the Bank did not have standing (*In re Marriage of Palacios*, 275 Ill. App. 3d at 568), and they failed to submit sufficient evidence to support their claim. Olufemi and Bola's brief does not cite to any evidence in the record concerning MERS' agency powers, and instead quotes from cases in Nebraska, New York, Missouri, and an unpublished opinion in California, all of which contain significantly different factual backgrounds. As a result, the trial court did not err in granting the Bank's motion for summary judgment and denying Olufemi and Bola's motion to dismiss since the Bank presented evidence that it held the note and mortgage.

¶ 74                      D. Holder of the Promissory Note and Mortgage

¶ 75    Last, Olufemi and Bola argue that the Bank does not have standing because BAC did not hold title to the promissory note and mortgage at the time of the suit and did not qualify as a holder, agent, trustee or pledgee. Here, Olufemi and Bola largely restate their previous arguments that the Bank cannot hold the note and mortgage because Aegis was dissolved in 2007 and MERS never held title to the promissory note, which they also point out lists Aegis as the payee, not BAC. Olufemi and Bola additionally argue that, since the Bank did not have standing to file the foreclosure lawsuit, the trial court lacked subject matter jurisdiction to enter its order of summary judgment and all subsequent orders, citing *People v. Capital*

*News, Inc.*, 137 Ill. 2d 162, 170 (1990) (when a plaintiff lacks standing to assert a claim, the trial court's judgment must be set aside for lack of subject matter jurisdiction).

¶ 76 Olufemi and Bola's argument that BAC never held the note and mortgage relies on the implication from their previous arguments that BAC could not have held the note and mortgage since MERS' agency powers were terminated when Aegis was dissolved in 2007 and MERS never held the note. However, the Bank presented evidence that BAC held the note when the instant action was filed, and Olufemi and Bola failed to present any evidence to support their argument that the Bank lacked standing. As a result, the trial court did not err in granting the Bank's motion for summary judgment and denying Olufemi and Bola's motion to dismiss.

¶ 77                                      III. Fraud on the Court

¶ 78 Next, Olufemi and Bola argue that the Bank's attorneys fraudulently created standing to file the instant action by creating and executing the assignment from MERS to BAC. Manufacturing evidence favorable to a plaintiff, or concealing evidence favorable to a defendant, and the concealment of that scheme would constitute fraud on the court. *People v. Ranson*, 4 Ill. App. 3d 953, 956 (1972). A trial court would lack subject matter jurisdiction where there was fraud upon the court. *In re Petition to Annex Certain Territory to the Village of Willowbrook*, 37 Ill. App. 2d 393 (1962).

¶ 79 Here, Olufemi and Bola argue the assignment of the mortgage by MERS to BAC is void since the "authorized signator" for MERS was William McAllister, who they claim is the same Bill McAllister who is a supervising attorney for the Bank's counsel, Codilis & Associates. Olufemi and Bola argue that, as a general rule, an agent may not act for two principals whose interests are adverse (*Chicago Title & Trust Co. v. Schwartz*, 339 Ill. 184, 193-94 (1930)), and that an agent's representation of both the buyer and seller of a parcel of real estate is an improper agency since the buyer and seller are adverse to each other (*Warrick v. Smith*, 137 Ill. 504, 508 (1891)).

¶ 80 However, Olufemi and Bola's argument relies on the Bank's alleged lack of standing, which they failed to show. Furthermore, Olufemi and Bola did not present evidence of the claimed fraud and its subsequent cover up, and they do not cite to the appellate record in their brief in support of their argument.

¶ 81 We do note that Olufemi and Bola attached to their motion to vacate the affidavit of Tony Hernandez, who stated that he researched the lawsuit and found that there are six people named William McAllister in the State of Illinois, one of whom is a supervising attorney for the Bank's counsel, Codilis, and that he believed the assignment was created by Codilis and signed by McAllister, "which may present a quandary for all parties as it appears that the foreclosing attorney has prepared evidence in favor of its defunct client BAC," and potentially a violation of the "Code of Ethical Conduct" for attorneys. However, Olufemi and Bola have not submitted any evidence supporting Hernandez's claims.

¶ 82 Moreover, Olufemi and Bola have not presented any evidence that McAllister was not an authorized signatory for MERS, and they do not cite any relevant case law in their briefs that show that MERS acted improperly. Since Olufemi and Bola failed to show the Bank lacked standing and they did not present evidence of fraud, the trial court did not err when it granted the Bank's motion for summary judgment and denied Olufemi and Bola's motion to dismiss.

¶ 83                          IV. Grace Period Notice

¶ 84    Olufemi and Bola next argue that the trial court erred as a matter of law when it interpreted section 15-1504 of the Foreclosure Law such that Olufemi and Bola admitted in effect to receiving a grace period notice, by not denying such in their answer, even though the complaint failed to allege it.

¶ 85    The Bank argues, in a short three-paragraph response, that the trial court did not err in denying Olufemi and Bola's motion to dismiss; that the Foreclosure Law does not require that Olufemi and Bola *receive* a grace period notice only that the Bank *send* it; and that the court should not depart from the Foreclosure Law's "long established procedures." The Bank cites only one unpublished order in support of its argument.


¶ 86                          A. Section 15-1502.5

¶ 87    Section 15-1502.5 of the Foreclosure Law, commonly known as the Homeowner Protection Act (the Act), became effective on April 6, 2009. 735 ILCS 5/15-1502.5 (West 2010). The Act was written to provide owners of single-family, owner-occupied properties an additional last-minute escape valve to rescue their mortgages before the lender files a suit under the Foreclosure Law. The grace period notice required by the Act directs the borrower to various resources available for counseling and loan modification assistance. 735 ILCS 5/15-1502.5(c) (West 2010). If a counseling agency approved by the United States Department of Housing and Urban Development notifies the lender within the 30-day period that the borrower is seeking approved counseling services, the lender cannot file suit until an additional 30 days has passed. 735 ILCS 5/15-1502.5(e) (West 2010).

¶ 88    A grace period notice is required before any foreclosure action may be instituted. Subsection 15-1502.5(c) of the Foreclosure Law provides:

> "No foreclosure action under Part 15 of Article XV of the Code of Civil Procedure shall be instituted on a mortgage secured by residential real estate before mailing the notice described in this subsection (c).

> The notice required in this subsection (c) shall state the date on which the notice was mailed, shall be headed in bold 14-point type 'GRACE PERIOD NOTICE', and shall state the following in 14-point type: 'YOUR LOAN IS MORE THAN 30 DAYS PAST DUE. YOU MAY BE EXPERIENCING FINANCIAL DIFFICULTY. IT MAY BE IN YOUR BEST INTEREST TO SEEK APPROVED HOUSING COUNSELING. YOU HAVE A GRACE PERIOD OF 30 DAYS FROM THE DATE OF THIS NOTICE TO OBTAIN APPROVED HOUSING COUNSELING. DURING THE GRACE PERIOD, THE LAW PROHIBITS US FROM TAKING ANY LEGAL ACTION AGAINST YOU. YOU MAY BE ENTITLED TO AN ADDITIONAL 30 DAY GRACE PERIOD IF YOU OBTAIN HOUSING COUNSELING FROM AN APPROVED HOUSING COUNSELING AGENCY. A LIST OF APPROVED COUNSELING AGENCIES MAY BE OBTAINED FROM THE ILLINOIS DEPARTMENT OF FINANCIAL AND PROFESSIONAL REGULATION.' " 735 ILCS 5/15-1502.5(c) (West 2010).

¶ 89    On appeal, Olufemi and Bola argue that the trial court erred in its interpretation of the Foreclosure Law when it held, under section 15-1504(c) of the Foreclosure Law (735 ILCS 5/15-1504(c) (West 2010)), that Olufemi and Bola had admitted in effect that the Bank had

sent the grace period notice required by section 15-1502.5 of the Foreclosure Law (735 ILCS 5/15-1502.5 (West 2010)). However, under *de novo* review, we need not give any deference to the judgment or reasoning of the trial court. *Vincent*, 226 Ill. 2d at 14.

¶ 90    The facts related to a grace period notice are undisputed and in the record. Olufemi and Bola swore in their affidavits in response to the Bank's motion for summary judgment that they never received a grace period notice. The Bank does not contest this fact but, rather, argues that the Foreclosure Law does not require that Olufemi and Bola *receive* a grace period notice but, rather, all that is required is that the Bank *send* the notice, and that the sending "is presumed when a plaintiff files a complaint that follows the form for pleadings set forth in 735 ILCS 5/[15]-1504(a) [(West 2010)]." This argument relies upon the reasoning of the trial court, which found that, because the original complaint looked "substantially" like the form set forth in section 15-1504(a) of the Foreclosure Law, the complaint included the allegation that "other notices required to be given," *i.e.*, the grace period notice, had been sent. The trial court concluded that, since Olufemi's answer had not denied this unstated allegation, which the trial court construed to be included in the complaint as part of the "other notices required to be given," he had admitted it, and therefore this argument was waived.

¶ 91                                    B. Relevant Case Law

¶ 92    Citing only an unpublished order in U.S. Bank, N.A. v. Olavarria, No. 10-CH-32532 (Cir. Ct. Cook Co.) (*Olavarria*), the trial court found that "other notices required to be given" includes the grace period notice required by sections 15-1502.5(b) and (c) of the Foreclosure Law (735 ILCS 5/15-1502.5(b), (c) (West 2010)). In *Olavarria*, the circuit court, as in the present case, denied the defendant's section 2-619 motion to dismiss based on lack of a grace period notice. The court in *Olavarria* stated that since the plaintiff's complaint followed the form laid out in section 15-1504(a) of the Foreclosure Law, it was automatically construed under section 15-1504(c) to include the allegation that "other notices required to be given have been duly and properly given." Citing no authority other than the Foreclosure Law, the court in *Olavarria* held that the clause "other notices required to be given" in section 15-1504(c) includes the grace period notice. Thus, the court in the instant case held that, because on a motion to dismiss the court must accept all well-pled allegations in the complaint, "the court must accept the allegation that the grace period notice was sent by U.S. Bank to the defendant as true," and therefore it denied Olufemi and Bola's motion to dismiss.

¶ 93    However, under Illinois law, decisions of the circuit courts have no precedential value, so the circuit court's decision in *Olavarria*, cited by the trial court, has no precedential value here. See *Delgado v. Board of Election Commissioners*, 224 Ill. 2d 481, 488 (2007).

¶ 94    Binding case law regarding the grace period notice also does not resolve the current dispute. This court has held that a "flawless" grace period notice is not required before a foreclosure complaint can be filed and that, where there is a technical defect in the notice and the mortgagor has not alleged prejudice, dismissal of the complaint would be "futile." *Bank of America, N.A. v. Luca*, 2013 IL App (3d) 120601, ¶ 16; *Aurora Loan Services, LLC v. Pajor*, 2012 IL App (2d) 110899, ¶ 27. In *Bank of America, N.A. v. Luca*, 2013 IL App (3d) 120601, ¶ 8, the defendants argued that since the grace period notice was addressed to only one of the two defendants, the notice was defective and the foreclosure action could not commence. The appellate court found, however, that since both defendants had knowledge of

- 16 -

the notice, had in fact discussed loan modification with the plaintiff, and had failed to allege any prejudice based on defective notice, their claim was meritless. *Luca*, 2013 IL App (3d) 120601, ¶ 17. Similarly, in *Aurora Loan Services, LLC v. Pajor*, 2012 IL App (2d) 110899, ¶¶ 26-28, the court held that although the plaintiff had sent a grace period notice before it was technically the mortgagee, the substantive requirements of section 15-1502.5 were met, and thus this "irregularity" did not warrant dismissal of the foreclosure action. In each of these cases, there was evidence in the record that the grace period notice was sent and that the defendants had knowledge of the notice. See *Pajor*, 2012 IL App (2d) 110899, ¶ 27; *Luca*, 2013 IL App (3d) 120601, ¶ 17. In the present case, however, Olufemi and Bola do not allege that the grace period notice was defective but, rather, that they did not receive *any* notice at all. Further, evidence of a grace period notice being sent is not found within the record, nor did the Bank claim it sent it. Neither this court nor the Illinois Supreme Court has ever held that a sale may be confirmed on appeal without *any* grace period notice being sent. Indeed, section 15-1502.5(h) of the Foreclosure Law states that there can be no waiver of this prerequisite. 735 ILCS 5/15-1502.5(h) (West 2010).

¶ 95    The trial court's holding on this issue and the Bank's argument on appeal both rely on a specific interpretation of section 15-1504 of the Foreclosure Law. Since the case law does not speak to this issue, the resolution of this issue is a case of first impression and turns upon a question of statutory interpretation.

¶ 96                                    C. Statutory Interpretation

¶ 97    Statutory interpretation is a question of law that we review *de novo*. See *Ryan v. Board of Trustees of the General Assembly Retirement System*, 236 Ill. 2d 315, 319 (2010); *McNamara v. Oak Lawn Municipal Officers Electoral Board*, 356 Ill. App. 3d 961, 964 (2005); *Cullerton v. Du Page County Officers Electoral Board*, 384 Ill. App. 3d 989, 991 (2008). As we have indicated, *de novo* consideration means we perform the same analysis that a trial judge would perform. *Khan v. BDO Seidman, LLP*, 408 Ill. App. 3d 564, 578 (2011).

¶ 98    The fundamental rule of statutory construction is to ascertain and give effect to the legislature's intent. *People ex rel. Birkett v. City of Chicago*, 202 Ill. 2d 36, 45 (2002). The best indication of legislative intent is the plain and ordinary meaning of the statutory language. *Birkett*, 202 Ill. 2d at 45. Where the language is clear and unambiguous, we must apply the statute without resort to other aids of statutory construction. *Birkett*, 202 Ill. 2d at 45-46. If the statutory language is ambiguous, we look to other sources to decide the legislature's intent. *Birkett*, 202 Ill. 2d at 46. We must view all provisions of a statutory enactment as a whole and "[a]ccordingly, words and phrases should not be construed in isolation, but must be interpreted in light of other relevant provisions of the statute." *Southern Illinoisan v. Illinois Department of Public Health*, 218 Ill. 2d 390, 415 (2006) (citing *Michigan Avenue National Bank v. County of Cook*, 191 Ill. 2d 493, 504 (2000)). Statutes are interpreted with the presumption that the legislative intent was not to create "absurd, inconvenient, or unjust results." *In re Application of the County Treasurer & ex officio County Collector*, 2013 IL App (1st) 130103, ¶ 9 (citing *Fisher v. Waldrop*, 221 Ill. 2d 102, 112 (2006)). "Furthermore, reviewing courts have a duty to construe a statute in a manner that upholds its validity and constitutionality." *In re Application of the County Treasurer*, 2013 IL App (1st) 130103, ¶ 9 (citing *Fisher*, 221 Ill. 2d at 112).

- 17 -

¶ 99    This issue requires the resolution of two sections of the Foreclosure Law: sections 15-1502.5 and 15-1504. Section 15-1502.5 of the Foreclosure Law reads in pertinent part:

"(b) *** [N]o mortgagee shall file a complaint to foreclose a mortgage secured by residential real estate until the requirements of this Section have been satisfied.

* * *

[(c)] No foreclosure action under Part 15 of Article XV of the Code of Civil Procedure shall be instituted on a mortgage secured by residential real estate before mailing the notice described in this subsection (c).

The notice required in this subsection (c) shall state the date on which the notice was mailed, shall be headed in bold 14-point type 'GRACE PERIOD NOTICE ***.'

***

The sending of the notice required under this subsection (c) means depositing or causing to be deposited into the United States mail an envelope with first-class postage prepaid that contains the document to be delivered. ***

(d) Until 30 days after mailing the notice provided for under subsection (c) of this Section, no legal action shall be instituted under Part 15 of Article XV of the Code of Civil Procedure.

* * *

(h) There shall be no waiver of any provision of this Section." 735 ILCS 5/15-1502.5(b), (c), (d), (h) (West 2010).

¶ 100    The plain language of this section indicates that the legislature intended for the grace period notice to be sent prior to *any* foreclosure action under the Foreclosure Law, as indicated by sections 15-1502.5(b) ("[N]o mortgagee shall file a complaint to foreclose a mortgage secured by residential real estate until the requirements of this Section have been satisfied."), 15-1502.5(c) ("No foreclosure action under Part 15 of Article XV of the Code of Civil Procedure shall be instituted on a mortgage secured by residential real estate before mailing the notice described in this subsection (c)."), and 15-1502.5(d) ("Until 30 days after mailing the notice provided for under subsection (c) of this Section, no legal action shall be instituted under Part 15 of Article XV of the Code of Civil Procedure."). 735 ILCS 5/15-1502.5(b), (c), (d) (West 2010). These requirements are mandatory, because section 15-1105(b) defines the word "shall" as used in the Foreclosure Law as "mandatory and not permissive." 735 ILCS 15-1105(b) (West 2010). "A mortgagee cannot comply with these requirements while a foreclosure suit is pending. The notice must come before the suit." *Pajor*, 2012 IL App (2d) 110899, ¶ 23.

¶ 101    The Bank contends, however, relying on the logic of the trial court, that Olufemi and Bola lost the ability to challenge a lack of grace period notice by not denying in an answer that it was sent, despite the fact that the complaint failed to state that this notice was sent, and regardless of whether the notice was actually sent. The Bank's argument relies on a specific reading of section 15-1504 of the Foreclosure Law. 735 ILCS 5/15-1504 (West 2010). This section reads in pertinent part:

"(c) *** The statements contained in a complaint in the form set forth in subsection (a) of Section 15-1504 are deemed and construed to include allegations as follows:

* * *

(9) that any and all notices of default or election to declare the indebtedness due and payable or other notices required to be given have been duly and properly given." 735 ILCS 5/15-1504(c)(9) (West 2010).

¶ 102    The trial court interpreted "other notices required to be given" to include the grace period notice described in section 15-1502.5 of the Foreclosure Law. Under this interpretation of the Foreclosure Law, it is deemed alleged in any complaint in the form set forth in section 15-1504(a) that the grace period notice was sent. If a defendant does not deny this unstated allegation, it is therefore admitted. In the trial court's assessment, cited approvingly by the Bank, the issue has therefore been waived. This admission and waiver would apply regardless of whether the mortgagee had actually sent a grace period notice, and there is no burden on the mortgagee to provide any proof that it was sent. However, as we explain below, we find that the trial court's interpretation of the Foreclosure Law does not reflect the intent of the legislature and find that the language "other notices required to be given" in section 15-1504 does not include the grace period notice required by section 15-1502.5.

¶ 103    First, we observe that section 15-1504 was enacted in 1990, 19 years prior to the enactment of section 15-1502.5 in 2009. Therefore, when the legislature wrote in section 15-1504 of the Foreclosure Law that, "the statements contained in a complaint in the form set forth in subsection (a) of Section 15-1504 are deemed and construed to include allegations *** that *** other notices required to be given have been duly and properly given," it could not have intended for "other notices required to be given" to include the grace period notice, because the grace period notice was not a required notice at the time of drafting of that provision. Instead, the most recent enunciation of the legislature controls, that "[t]here shall be no waiver" of the requirement of a grace period notice prior to the filing of a suit under the Foreclosure Law. 735 ILCS 5/15-1502.5(h) (West 2010).

¶ 104    Further, the interpretation of the statute by the trial court and the Bank creates an (1) absurd; (2) unjust; and (3) inconvenient result, and therefore is presumed not to be the intent of the legislature. See *In re Application of the County Treasurer*, 2013 IL App (1st) 130103, ¶ 9 (citing *Fisher*, 221 Ill. 2d at 112).

¶ 105    This interpretation creates an absurd result when viewed in light of the other relevant statutory provisions. Subsection 15-1502.5(h) states that no provision within that section, which includes the requirement of a grace period notice, can be waived. 735 ILCS 5/15-1502.5(h) (West 2010). To read the "other notices required to be given" to include grace period notice would create the absurd result that a defendant's inaction in response to an unwritten allegation could waive the need for such notice, which the statute states cannot be waived. To allow this section to be so easily waived would render it nearly unenforceable, an absurd result in light of the emphasis the statute places on the need for such notice to be sent prior to any action under the Foreclosure Law. See 735 ILCS 5/15-1502.5(b), (c), (d) (West 2010).

¶ 106    This interpretation also leads to an unjust result for Olufemi and Bola, and for future defendants. The Homeowner Protection Act was written to provide owners of single-family, owner-occupied properties an additional last-minute escape valve to rescue their mortgages before the lender files a suit under the Foreclosure Law. The grace period notice required by the Act directs the borrower to various resources available for counseling and loan modification assistance. 735 ILCS 5/15-1502.5(c) (West 2010). If a Housing and Urban Development (HUD)-approved counseling agency notifies the lender within the 30-day

- 19 -

period that the borrower is seeking approved counseling services, the lender cannot file suit until an additional 30 days has passed. 735 ILCS 5/15-1502.5(e) (West 2010).

¶ 107    In *Pajor*, 2012 IL App (2d) 110899, ¶ 24, the appellate court held that the purpose of section 15-1502.5 is to "encourage workouts for mortgages in default." This is achieved by allowing for a 30-day extension, during which the mortgagor may not file suit, if the mortgagor obtains approved housing counseling and the creation of a "sustainable loan workout plan." (Internal quotation marks omitted.) *Pajor*, 2012 IL App (2d) 110899, ¶ 24; 735 ILCS 5/15-1502.5(e) (West 2010). The events in the present case illustrate the potential injustice under the Bank's interpretation of the statute. In affidavits attached to their response to the Bank's motion for summary judgment, Olufemi and Bola insist that they did not receive any grace period notice. The Bank does not contend that this notice was sent. Instead, the Bank argues that Olufemi and Bola have waived their ability to raise the issue after Olufemi's *pro se* response to the complaint, in which he supposedly admitted an unstated allegation by failing to deny it. Olufemi states in his motion for leave to file *instanter*, that he filed his *pro se* answer to preserve his rights. Instead, under the Bank's interpretation of the statute, he lost his right to a grace period notice. We cannot assume that *had* Olufemi and Bola received such notice, they necessarily would have been able to create a workout plan; however, it is the intent of the legislature for each mortgagor to have this opportunity prior to any foreclosure action, and this opportunity was never given to them, creating an unjust result.

¶ 108    Lastly, this interpretation is inconvenient. As stated above, the legislature intends for mortgages to be worked out prior to the filing of a foreclosure suit. By allowing this provision to be so easily admitted, it creates a disincentive for mortgagees to send a grace period notice and create a workout plan with the mortgagor, which would lead to the inconvenience of additional foreclosure cases filed in the courts.

¶ 109    The Bank also points out that Olufemi and Bola's affidavits, attached to their response to the motion for summary judgment, stated only that they did not *receive* a grace period notice, while the statute requires only that the mortgagee *send* a grace period notice. However, Olufemi and Bola's affidavits, which state that that they did not *receive* a grace period notice can imply that the Bank did not *send* such notice, particularly where it is not within Olufemi and Bola's knowledge whether the notice was sent and where the Bank never claimed that such a notice was sent.

¶ 110    The Bank also argues that any departure from the "long-established" procedures of the Foreclosure Law defies logic. In support of this contention, the Bank cites a circuit court's unpublished order describing the Foreclosure Law:

> "Enacted and codified in 1987, it is an obvious compromise between lenders and borrowers. Lenders benefit from the law's establishment of a form complaint which is fairly immune from attack through pleading motions, and from the streamlined procedure the lender may use to prove up its case. *Borrowers benefit from the many windows of opportunity the law provides them to rescue their properties out of the foreclosure process* and the extraordinary length of time it takes to litigate even an uncontested case." (Emphasis added.) Citimortgage v. Schroedter, No. 11-CH-7639 (Cir. Ct. Cook Co.).

First, this description of the Foreclosure Law only emphasizes the importance of the grace period notice, which is a "window of opportunity" for homeowners to prevent foreclosures.

Second, and foremost, unpublished orders have no precedential value. *Burnette v. Stroger*, 389 Ill. App. 3d 321, 329 (2009) (citing Ill. S. Ct. R. 23 (eff. May 30, 2008)).

¶ 111    Finally, we note that, even if section 15-1504 presumes that a grace period notice was sent, that section does not presume an allegation in the complaint that a plaintiff waits 30 days to file an action pursuant to section 15-1502.5. 735 ILCS 5/15-1502.5(d) (West 2010). However, since there is no evidence that the Bank actually sent the grace period notice to Olufemi and Bola, it is impossible to determine whether the Bank waited 30 days to file the instant foreclosure action.

¶ 112    Accordingly, the trial court erred as a matter of law when it deemed that Olufemi and Bola admitted to receiving the grace period notice, even though the Bank never showed evidence that it mailed or served a notice, and thus we remand to the trial court to determine in an evidentiary hearing whether the grace period notice was sent, and whether the Bank waited past 30 days before they filed suit.

¶ 113                              V. Judgment of Foreclosure and Sale

¶ 114    On December 8, 2011, the trial court entered a judgment of foreclosure and sale against Olufemi and Bola. On December 20, 2012, it entered an order approving the report of sale and distribution, confirming the sale, and the order of possession. Olufemi and Bola request that this court vacate the judicial sale. We find that since a grace period notice is required to be sent and that the Bank must wait 30 days before a foreclosure action is filed, and there is no evidence in the record that this notice was sent, we must remand to the trial court to determine in an evidentiary hearing whether the grace period notice was sent and whether the Bank waited past 30 days before they filed suit. If the trial court finds that no grace period notice was sent or the Bank did not wait past 30 days before filing suit, we find that the trial court abused its discretion in confirming the judicial sale and all subsequent orders, and the judicial sale must be vacated in accordance with section 15-1508(b) of the Foreclosure Law (735 ILCS 5/15-1508(b) (West 2010)), and the case must be dismissed.

¶ 115                              A. Standard of Review

¶ 116    "Under the Foreclosure Law, after a judicial sale and a motion to confirm the sale has been filed, the court's discretion to vacate the sale is governed by the mandatory provisions of section 15-1508(b)." *Wells Fargo Bank, N.A. v. McCluskey*, 2013 IL 115469, ¶ 18. Section 15-1508(b) of the Foreclosure Law (735 ILCS 5/15-1508(b) (West 2010)) grants the court broad discretion to approve or disapprove judicial sales. *Parkway Bank & Trust Co. v. Korzen*, 2013 IL App (1st) 130380, ¶ 15. We review the approval of judicial sales under an abuse of discretion standard. *Parkway*, 2013 IL App (1st) 130380, ¶ 15. A circuit court abuses its discretion when its ruling "is arbitrary, fanciful, unreasonable, or where no reasonable person would take the view adopted by the trial court." *People v. Caffey*, 205 Ill. 2d 52, 89 (2001). An abuse of discretion standard is highly deferential to the circuit court. *Davis v. Kraff*, 405 Ill. App. 3d 20, 28 (2010).

¶ 117                              B. Section 15-1508(b) of the Foreclosure Law

¶ 118    Section 15-1508(b) of the Foreclosure Law requires that the sale shall not be confirmed unless the court finds that: "(i) a notice required in accordance with subsection (c) of Section

15-1507 was not given,[4] (ii) the terms of sale were unconscionable, (iii) the sale was conducted fraudulently, or (iv) justice was otherwise not done." 735 ILCS 5/15-1508(b) (West 2010).

¶ 119 "A court is justified in refusing to approve a judicial sale if unfairness is shown that is prejudicial to an interested party." *Mortgage Electronic Registration Systems, Inc. v. Thompson*, 368 Ill. App. 3d 1035, 1037 (2006) (citing *Citicorp Savings of Illinois v. First Chicago Trust Co. of Illinois*, 269 Ill. App. 3d 293, 300 (1999)).

¶ 120 The Foreclosure Law does not define "injustice" under section 15-1508(b)(iv). 735 ILCS 5/15-1508(b)(iv) (West 2010). Although *NAB Bank v. LaSalle Bank, N.A.*, 2013 IL App (1st) 121147, ¶ 9, attempted to narrow this provision, our supreme court in *Wells Fargo Bank, N.A. v. McCluskey*, 2013 IL 115469, subsequently defined its use. Our supreme court describes the injustice clause as a codification of "the long-standing discretion of the courts of equity to refuse to confirm a judicial sale." *McCluskey*, 2013 IL 115469, ¶ 19. "[T]he justice provision under section 15-1508(b)(iv) acts as a safety valve to allow the court to vacate the judicial sale and, in rare cases, the underlying judgment, based on traditional equitable principles." *McCluskey*, 2013 IL 115469, ¶ 25.

¶ 121 Our supreme court has stated that in order to vacate a sale and the underlying judgment, a defendant must: (1) have a meritorious defense; and (2) "establish under section 15-1508(b)(iv) that justice was not otherwise done because either the lender, through fraud or misrepresentation, prevented the borrower from raising his meritorious defenses to the complaint at an earlier time in the proceedings, or [that] *the borrower has equitable defenses that reveal he was otherwise prevented from protecting his property interests*." (Emphasis added.) *McCluskey*, 2013 IL 115469, ¶ 26.

¶ 122                                                   C. Application

¶ 123 Since we are remanding for an evidentiary hearing to determine whether the Bank sent the grace period notice and waited past 30 days to file its suit, we turn to the vacation of the sale. To vacate a sale, Olufemi and Bola must show that either: (1) fraud or misrepresentation prevented them from raising their meritorious defenses; or (2) an equitable defense reveals they were prevented from protecting their property interests. *McCluskey*, 2013 IL 115469, ¶ 26. Although in asking this court to vacate the sale, Olufemi and Bola do not cite specifically to one of the four provisions of section 15-1508(b), they do directly challenge their lack of grace period notice, and argue that the interpretation of the trial court was "fundamentally unfair" and constitutes a due process violation. Both of these claims speak to the fourth provision of section 15-1508(b), that "justice was otherwise not done." 735 ILCS 5/15-1508(b) (West 2010).

¶ 124 A grace period notice provides homeowners a mechanism to prevent foreclosure and stay in their homes. As stated earlier, a grace period notice has the purpose of encouraging workouts for mortgages, by giving mortgagors the opportunity to obtain "APPROVED HOUSING COUNSELING." See *Pajor*, 2012 IL App (2d) 110899, ¶ 24; 735 ILCS 5/15-1502.5(b) (West 2010). If the mortgagor obtains HUD-approved counseling within 30

---

[4]Subsection (c) of section 15-1507 requires that mortgagees give notice of the sale of the property to the mortgagor and to the public, prior to the judicial sale. 735 ILCS 5/15-1507(c) (West 2010). This is separate from the grace period notice required by section 15-1502.5.

days, and gives notice to the mortgagee, the mortgagor has an additional 30 days after sending such notice before the mortgagee may institute a foreclosure action. 735 ILCS 5/15-1502.5(a), (e) (West 2010). During this 30-day period, the mortgagor or the counselor, or both, may "prepare and proffer to the mortgagee a proposed sustainable loan workout plan." 735 ILCS 5/15-1502.5(e) (West 2010). A "sustainable loan workout plan" under this section is defined as: "a plan that the mortgagor and approved counseling agency believe shall enable the mortgagor to stay current on his or her mortgage payments for the foreseeable future." 735 ILCS 5/15-1502.5(a) (West 2010). In other words, such a plan would allow mortgagors to retain their interest in the property and remain in their home. If the mortgagor and mortgagee agree to a workout plan, then no foreclosure action can be instituted under the Foreclosure Law while the mortgagor adheres to such plan. 735 ILCS 5/15-1502.5(e) (West 2010). These provisions of the Homeowner Protection Act provide homeowners with a powerful mechanism to prevent foreclosure on their homes and therefore protect their property interest. Thus, where the required grace period notice has not been sent prior to the commencement of a foreclosure action or where the plaintiff has not waited past 30 days to file suit, mortgagors have been "prevented from protecting their property interests," and justice has not been done under subsection 15-1508(b)(iv) of the Foreclosure Law.

¶ 125    In the present case, there is no evidence on the record that a grace period notice was actually sent; Olufemi and Bola have claimed that they have not received such notice, and the Bank does not contend that the notice was sent or not sent. The Bank argues that the section 15-1508(b) factors have been met; however, it does not present any evidence concerning the grace period notice. Accordingly, since a grace period notice is required to be sent and the plaintiff must wait past 30 days before a foreclosure action is filed, and there is no evidence in the record that this notice was sent or how long the Bank waited to file suit, we must remand to the trial court to determine in an evidentiary hearing whether the grace period notice was sent and whether the Bank waited past 30 days to file its suit. If the trial court finds that no grace period notice was sent, then we find that: (1) the trial court abused its discretion in confirming the judicial sale and all subsequent orders; (2) and in that event, the judicial sale must be vacated in accordance with section 15-1508(b) of the Foreclosure Law (735 ILCS 5/15-1508(b) (West 2010)); and (3) the case must be dismissed. If the trial court finds that a grace period notice was sent, but plaintiff did not wait 30 days to file its lawsuit, we find that: (1) the trial court abused its discretion in confirming the judicial sale and all subsequent orders; (2) and in that event, the judicial sale must be vacated in accordance with section 15-1508(b) of the Foreclosure Law (735 ILCS 5/15-1508(b) (West 2010)); and (3) the case must be dismissed. If the trial court finds that a grace period notice was sent and plaintiff waited 30 days before filing suit, then the judgment of the trial court is affirmed.

¶ 126                                                CONCLUSION

¶ 127    For the reasons set forth above, we remand to the trial court to determine in an evidentiary hearing whether the grace period notice was sent and whether the Bank waited past 30 days to file its suit. If the trial court finds that no grace period notice was sent, then we find that the trial court abused its discretion in confirming the judicial sale and all subsequent orders, and the judicial sale must be vacated in accordance with section 15-1508(b) of the Foreclosure Law, and the case must be dismissed. 735 ILCS 5/15-1508(b)

(West 2010).

¶ 128        Remanded for an evidentiary hearing.