2024 IL App (1st) 220606-U
No. 1-22-0606

FIRST DIVISION
February 20, 2024

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| U.S. BANK NATIONAL ASSOCATION AS TRUSTEE OF THE BUNGALOW SERIES IV TRUST, | ) ) ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee, | ) ) | No. 10 CH 45741 |
| v. | ) ) | |
| DAVID M. LESSER, | ) ) | The Honorable Joel Chupack, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE PUCINSKI delivered the judgment of the court.
Presiding Justice Fitzgerald Smith and Justice Lavin concurred in the judgment.

**ORDER**

*Held*:    In this mortgage foreclosure action, we affirm the decision of the circuit court granting plaintiff summary judgment and confirming the judicial sale of the property. Plaintiff established a *prima facie* entitlement to foreclosure and defendant-appellant failed to meet his burden to raise an issue of fact supporting his affirmative defenses. Defendant-appellant's motion to reconsider was also properly denied.

¶ 1        In this mortgage foreclosure action, defendant-appellant David M. Lesser appeals the orders in favor of plaintiff-appellee U.S. Bank National Association as Trustee of the Bungalow

Series IV Trust ("U.S. Bank") that granted summary judgment in U.S. Bank's favor, denied Lesser's motion to reconsider, and confirmed the judicial sale of the subject property. For the following reasons, we affirm.

¶ 2                                                    BACKGROUND

¶ 3         This action stems from loan and mortgage documents executed in August 2007 by Lesser and his former spouse, Elizabeth A. Wiener, during their marriage. Harris, N.A. (Harris), made a loan to Wiener in the amount of $1 million, evidenced by a promissory note signed by Wiener. Significant to this appeal, the loan was made only to Wiener; Lesser did not sign the promissory note. The loan was secured by a mortgage encumbering the residence known as 855 W. George Street in Chicago, Illinois (the property). Whereas the loan was only in Wiener's name, both Lesser and Wiener executed the mortgage securing the loan.[1]

¶ 4         On the same date in August 2007, Wiener and Lesser signed and executed a second mortgage against the property, which secured a home equity line of credit (HELOC) in the principal amount of $125,000. However, the second mortgage is not at issue in this appeal.

¶ 5         In September 2009, Wiener filed a petition for dissolution of marriage.[2] In June 2010, the circuit court entered a plenary order of protection granting Lesser exclusive possession of the property. In the eventual judgment for dissolution of marriage, Lesser was awarded "100% interest in the property free and clear of any claim by Wiener." *BMO Harris Bank, N.A. v. Lesser*, 2016 IL App (1st) 143115-U, ¶ 8. The record reflects that Lesser continued to reside at the subject property.

---

[1] The mortgage identified the "mortgagor" as "David M Lesser and Elizabeth A Wiener, Husband and Wife, Not as Joint Tenants or Tenants in Common But as Tenants by the Entirety."

[2] The instant matter was consolidated with the divorce proceeding until December 2018.

¶ 6        It is undisputed that payments due under the loan stopped in 2010. On October 20, 2010, Harris filed a foreclosure complaint against Lesser, Wiener, and others with potential interests in the property.[3] The complaint contained separate counts regarding the first mortgage securing the $1 million loan (count I) and the second mortgage corresponding to the HELOC (count II). Count II was eventually dismissed and is not at issue in this appeal. Copies of the loan and mortgage were attached to the complaint.

¶ 7        Lesser's Affirmative Defenses Based on Harris' Alleged Fraud

¶ 8        In July 2011, Lesser filed an answer and pleaded several affirmative defenses. In his pleading, Lesser did not dispute the authenticity of the mortgage and loan documents attached to the complaint. However, he raised a number of affirmative defenses, all of which were premised on alleged fraud by a Harris loan officer regarding the information used to approve the underlying 2007 loan to Wiener and the corresponding mortgage.

¶ 9        Lesser pleaded a number of factual allegations common to the affirmative defenses. Lesser alleged that since 2001, he and Wiener had entered into a number of different loan transactions with Harris, in which they worked with a "particular loan officer" at Harris. Lesser did not identify the loan officer by name. Lesser pleaded that by 2007, the loan officer and Harris had detailed information about Wiener and Lesser's income, assets and employment.

¶ 10        Lesser alleged that he and Wiener approached Harris for a new refinancing loan in 2007. Lesser pleaded that he and Wiener completed and submitted a residential loan application that correctly indicated Lesser's monthly employment income was $18,000 and that Wiener's monthly

---

[3] The complaint also named as defendants Meghan Mulhern, Laura Wolbeck, Aileen Rooney, the City of Chicago, and "Unknown Owners and non-Record Claimants." None of those parties is involved in this appeal.

employment income as $1200. At that time, Wiener worked part time as a teacher and academic administrator.

¶ 11          According to Lesser, Harris's loan officer subsequently contacted him by telephone and told him that Wiener's credit rating was "excellent and Defendant Lesser's credit rating was not." The loan officer indicated Harris would agree to a loan of $1,000,000 as well as a $250,000 home equity line of credit to be secured by a mortgage on the property executed by both Wiener and Lesser. The interest rate for the loan would be lower (5.75%) if Wiener was the sole borrower, whereas it would be higher (7.75%) if she and Lesser were co-borrowers. Lesser alleged that in reliance upon the loan officer's representations, he agreed for Wiener to be the sole borrower, with both Wiener and Lesser executing a corresponding mortgage. Lesser pleaded that the loan officer never indicated that false information about Wiener's income and employment would be used to process the loan.

¶ 12          Lesser alleged that Harris subsequently prepared a typewritten residential loan application containing false information that differed dramatically from the correct information provided by Wiener and Lesser. The loan application prepared by Harris overstated Wiener's income level "to a number nearly twenty times greater" than that indicated by the prior application prepared by Lesser and Weiner. It also falsely stated that Wiener was employed as the president of "Wieners Inc." a non-existent entity. Lesser alleged "upon information and belief" that the fraudulent application was prepared by the same loan officer.

¶ 13          Lesser further alleged that the false loan application was "presented for the first time to Defendant Wiener at the 2007 Closing when she was asked to sign that document together with multiple other documents as part of the standard closing process." Lesser pleaded that it was never disclosed to Wiener or Lesser that the loan application contained false information before Wiener

was asked to sign it at the closing. Lesser pleaded that he did not review the loan application because "he had no reason to believe that it differed in any way" from the previous, accurate loan application that he and Wiener prepared.

¶ 14     Lesser alleged that Harris' misrepresentations and nondisclosures were made with specific intent to induce Wiener and Lesser to sign the mortgage documents. Based on these facts, Lesser pleaded affirmative defenses of fraudulent inducement, unclean hands, estoppel, illegality, and mistake of fact.

¶ 15     In August 2011, Harris filed an answer to Lesser's affirmative defenses, in which it responded it had "insufficient knowledge to either admit or deny" a number of Lesser's factual allegations.  After Lesser successfully moved to strike Harris's answer, Harris was ordered to file a new answer or otherwise plead. On November 30, 2011, Harris moved to dismiss the affirmative defenses. That motion was denied in July 2012.

¶ 16     In May 2012, Lesser served discovery requests upon Harris, including requests for documents relating to the 2007 loan and documents related to the facts alleged in the affirmative defenses. The record reflects that Harris's successor entity, BMO Harris Bank, N.A. (BMO Harris), was substituted as the party plaintiff.

¶ 17     BMO Harris' Settlement with Wiener and Related Prior Appeal

¶ 18     In May 2013, BMO Harris and Wiener executed a settlement agreement in which BMO Harris agreed to dismiss Wiener from the foreclosure action and Wiener disclaimed any interest in the property. See *Harris v. Lesser*, 2016 IL App (1st) 143115-U, ¶ 9.  BMO Harris released Wiener " 'from all actions, claims, demand, damages, obligations [and] liabilities' " related to the note and mortgage. *Id*. However, the settlement agreement also specified that BMO Harris " 'retained the security interest created by the [mortgage]' " and that no provision of the agreement

could be used as a defense to the foreclosure action. Lesser was not a party to the settlement agreement.

¶ 19       In October 2013, Lesser moved to dismiss this foreclosure action due to the settlement between Wiener and BMO Harris, arguing that BMO Harris had discharged and released the debts that were the basis of the foreclosure. The trial court granted that order, but BMO Harris appealed (no. 14-3115).

¶ 20       In May 2016, this court reversed the order granting Lesser's motion to dismiss and remanded for further proceedings. *BMO Harris Bank, N.A.*, 2016 IL App (1st) 143115-U. This court concluded that the release in the Wiener-BMO Harris settlement did not discharge the outstanding debt but "discharged only the personal liability of Wiener who, by virtue of the judgment for dissolution of marriage, no longer had a legal interest in the mortgaged property." *Id.* ¶ 3.

¶ 21       In January 2017, BMO Harris filed its answer to defendant's affirmative defenses. The record reflects that BMO Harris tendered discovery responses to Lesser in October 2017. Lesser objected to those responses and subsequently moved for discovery sanctions. That motion was ultimately denied.

¶ 22       Assignment of the Underlying Mortgage to U.S. Bank

¶ 23       In 2018, the underlying mortgage was assigned from BMO Harris to another entity, U.S. Bank Trust National Association as Trustee for CVF III Mortgage Loan Trust II; that entity was substituted as the plaintiff in October 2018. The mortgage was subsequently assigned to U.S. Bank Trust National Association as Trustee of the Tiki Series IV Trust. It was then assigned again to the plaintiff-appellee herein, U.S. Bank Trust National Association, as Trustee of the Bungalow Series IV Trust. For brevity and ease of reference, we refer to these entities as "U.S. Bank."

¶ 24    U.S. Bank's 2019 Motion for Summary Judgment and Additional Discovery

¶ 25    In July 2019, U.S. Bank moved for summary judgment, urging the undisputed facts evidenced a default with respect to the mortgage and note and that Lesser's affirmative defenses were meritless. U.S. Bank emphasized that Lesser was not a party to the subject note, such that he was "limited to being a mortgagor as he pledged his interest in the property as security for the loan."

¶ 26    On September 30, 2019, Lesser filed a motion to compel discovery. In December 2019, the court granted that motion in part, requiring "the parties to whom discovery was propounded" to provide documents concerning the 2007 loan, as well as copies of loan applications received from Wiener or Lesser. U.S. Bank moved to reconsider, noting that Lesser's discovery requests were propounded to BMO Harris, which was no longer a party. The trial court subsequently allowed Lesser to propound written discovery to U.S. Bank and to issue third-party discovery to BMO Harris. In April 2020, Lesser issued a subpoena to BMO Harris and discovery requests to U.S. Bank. BMO Harris and U.S. Bank submitted responses in 2021.

¶ 27    U.S. Bank's Renewed Motion for Summary Judgment and Lesser's Response and

Counteraffidavit

¶ 28    On September 2, 2021, U.S. Bank filed a renewed motion for summary judgment, a "Second Amended Motion for Judgment of Foreclosure and Sale," and supporting affidavits. U.S. Bank included an affidavit of amounts due and owing sworn to by Dani Coe, an asset manager of U.S. Bank's servicing agent.

¶ 29    On November 4, 2021, Lesser filed his response to the motion for summary judgment. Lesser maintained that U.S. Bank had not made a *prima facie* case for foreclosure because there were material questions of fact as to whether the loan and mortgage were valid and enforceable.

Lesser also argued that there were triable issues of fact pertaining to his allegations of BMO's "fraudulent conduct." He asserted that the allegations in his affirmative defenses were substantiated by documents produced by BMO Harris, which allegedly demonstrated that Harris prepared a loan application with false information that was presented to Wiener to sign at closing.

¶ 30    Lesser also suggested that U.S. Bank had not established standing, as the various assignments were "inconsistent regarding whether or not the debt, as opposed to the mortgage only, has been assigned." He suggested that the assignment could be "part of BMO's coverup." Lesser also argued that U.S. Bank's supporting affidavit was insufficient under Supreme Court Rule 113.

¶ 31    Lesser simultaneously submitted an "Affidavit of David M. Lesser in Support of Response to Motion for Summary Judgment" (the counteraffdavit) in which he "reaffirm[ed]" the allegations set forth in his answer and affirmative defenses. He stated that in July 2007, he prepared a loan application with accurate information regarding his and Wiener's finances and employment, which he submitted by email to BMO Harris. Attached to his counteraffidavit was a copy of that loan application, signed by him and Wiener as co-borrowers on July 17, 2007. That application indicated that Lesser's employment income was $18,000 per month, Wiener's employment income was $1200 per month, and that they received an additional $2500 in monthly "Net Rental Income" and $350 in monthly "Dividends/Interest." The application indicated that Lesser was employed by "David M. Lesser dba Karian Capital Group and David M. Lesser & Associates," and that Wiener was employed by Kaplan, Inc. as an "instructor."

¶ 32    According to Lesser's counteraffidavit, documents produced by BMO Harris showed that in August 2007, BMO Harris processed the loan by using "fraudulent" information about Wiener's income that differed dramatically from the correct information that Lesser had provided in the July

2007 application. Lesser's affidavit attached two forms dated August 16, 2007, entitled "Uniform Underwriting and Transmittal Summary" and "Harris Bank Multi-Product Pre-Qualification Worksheet", both of which indicated that Wiener's monthly income was $21,000.00. Those forms reflect that they were prepared by Guadulupe Perez as "underwriter" and that Brian Jessen was the "Loan Originator."

¶ 33 Lesser's counteraffidavit also attached a four-page "Uniform Residential Loan Application" form identifying Wiener as the borrower and reflecting that she signed it at two separate points, on July 18, 2007 and August 17, 2007. Lesser averred that he recognized Wiener's signature. That loan application indicated that Wiener's monthly income was $21,100 and that she was employed as president of "Weiners Inc." The same document identified Brian Jessen as the "interviewer." Lesser averred that this income information was dramatically different from the correct information that he had previously provided, and that he had never heard of "Weiners Inc." before the instant lawsuit.

¶ 34 The counteraffidavit also attached correspondence from Harris addressed to Wiener dated August 2, 2007, informing her that her request for mortgage financing had been approved and setting forth the terms of an approved $1 million loan. That correspondence identified Brian Jessen as "your Residential Mortgage Specialist."

¶ 35 Lesser's counteraffidavit also attached, as a single exhibit, four untitled pages produced by BMO Harris that Lesser referred to collectively as the "Investigatory Report." The first two pages of that exhibit consist of a series of typewritten notations, nearly all of which reflect they were made from April 2011 through June 2011 and entered by individuals identified only as "ISAIS" or "LAURIE."

¶ 36    One such entry, dated May 24, 2011, reflected a conversation with Wiener in which she denied knowledge of the contents of the loan application. That entry stated:

> "During a review of the mortgage documents, it was noticed that on the application Elizabeth Wiener listed her income as $21,000 a month and her employer [as] Wieners Inc.; 855 W. George St. During an interview with Elizabeth Wiener on April 14, 2011 she stated that her husband filled out the application. Ms. Wiener said she might have signed the documents but did not look at the document and did not fill it out. Ms. Wiener further states she was told by her husband they were applying for a HELOC and the money was to be used for his business. Ms. Wiener is a teacher's aid making $1000.00 a month and has never heard of Weiners Inc. David Lesser reported to our attorney that he gave Harris a correct mortgage application and that the application was altered by the loan officer at Harris. The loan officer was Brian Jessen; who no longer is employed by Harris N.A."

¶ 37    A separate entry dated June 30, 2011, reflects that Jessen was interviewed. According to that entry, Jessen claimed he did not specifically remember the loan but said "Lesser was highly educated and involved in the industry" and that "Lesser is only trying to get out of the loan by any means necessary and the allegation is just an attempt to stop the bank from doing what it needs to do." Jessen also stated that "he would not make any change to any application on his own" and that any changes "would have been with the knowledge of the customer."

¶ 38    Another entry reflected that BMO Harris received a subpoena and learned that the State's Attorney's office had "opened an investigation into Wiener's loan and possible fraud committed by former employee Brian Jessen."

¶ 39    Apart from these dated entries, the "Investigatory Report" exhibit to Lesser's counteraffidavit included an untitled two-page document without any identified author. According to that document, Lesser emailed an application to Jessen and Christine Coe (Jessen's assistant) stating Wiener's income was $1000 per month, but Choe subsequently "entered into the system" an application listing Wiener "as the president of Wiener Inc. with a monthly income of $21,000." The document indicated that Choe was interviewed and "explained that after receiving David Lesser's emailed application [Jessen] would have reviewed the application along with the customer's tax returns. [Jessen] would then make contact with the customer and then give the application along with his notes to [Choe] to enter into the system." Choe indicated that any changes to Wiener's income and employment would have come from Jessen's notes. Choe "stated the reason the application was changed was because David Lesser's credit score was so low" it would have otherwise been declined.

¶ 40    The document concluded: "The change of information on this loan appears to have been altered by Brian Jessen with help from David Lesser. False information was submitted to Harris N.A. for the purpose of obtaining a million dollar mortgage."

¶ 41    In his counteraffidavit, Lesser stated that the four pages comprising the "Investigatory Report" exhibit were the only documents produced by BMO Harris regarding its internal investigation. He claimed they showed that BMO Harris personnel "corroborate[d] substantially all of the allegations" he asserted in his affirmative defenses.

¶ 42    Elsewhere in the counteraffidavit, Lesser averred that BMO Harris had "refused to comply with" his valid discovery requests and had "refused to identify a deponent with firsthand knowledge" of BMO Harris' loan processing practices or the processing of the loan at issue. He stated "there are material facts that would corroborate and/or provide further support for the matters attested to *** that are known only to persons from whom I have been unable to procure information" due to BMO Harris's refusal. Lesser further asserted "[o]n information and belief" that had BMO Harris complied with his document requests and identified deponents, "these documents and deponents would establish" the truth of his allegations about BMO Harris's "fraudulent conduct" and other facts probative of his affirmative defenses.

¶ 43    U.S. Bank filed its reply in support of summary judgment on November 16, 2021. Among other arguments, U.S. Bank contended that Lesser's counteraffidavit did not comply with Supreme Court Rule 191 because it made conclusory statements, did not set forth facts with particularity, and did not lay a proper foundation for the exhibits thereto be admissible as business records under Illinois Rule of Evidence 803(6) or Supreme Court Rule 236.

¶ 44    U.S. Bank also contended that the counteraffidavit's allegations were irrelevant as they were "not germane to *** the default under the mortgage and note at issue." Thus, it argued that Lesser did not raise a material issue of fact to preclude summary judgment.

¶ 45    The Trial Court's Summary Judgment Ruling

¶ 46    On December 1, 2021, the parties appeared before the court, at which time the court stated its reasons for granting U.S. Bank's motion for summary judgment. The court found that U.S. Bank's affidavit of amounts due and owing complied with Supreme Court Rules 113, 191, and 236. The court remarked that Lesser's counteraffidavit failed to raise a genuine issue of material fact as to whether the loan was in default, or with respect to the amounts due and owing. With

respect to standing, the court found that "plaintiff has established a *prima facie* case." The court noted that Lesser did not plead standing as an affirmative defense, and it otherwise found that Lesser failed to establish a genuine issue of material fact to dispute U.S. Bank's standing.

¶ 47    In granting summary judgment, the court further commented that Lesser's counteraffidavit "fails to comply with Supreme Court Rule 191", was "in the form of a narrative and not in the form of an affidavit," and failed to lay a proper foundation for the admission of the attached documents. The court also remarked that the counteraffidavit did not dispute the amounts due or raise a genuine issue of material fact. Accordingly, on December 1, 2021, the trial court entered orders granting U.S. Bank's motion for summary judgment and for judgment of foreclosure and sale.[4]

¶ 48    Lesser's Motion to Reconsider and Supporting Affidavit

¶ 49    On February 3, 2022, Lesser filed a "Motion to Vacate and Reconsider" the order granting summary judgment, as well as a supporting affidavit ("Affidavit 2"), which attached thereto many of the same documents previously attached as exhibits to the counteraffidavit. In Affidavit 2, Lesser included further assertions as to how BMO Harris had resisted discovery and included averments that he believed the documents produced by BMO Harris were admissible as business records. For example, Lesser averred that he believed "in good faith that the Investigatory Report is a copy of a genuine BMO [Harris] business record by BMO [Harris] in the ordinary course of its business." Lesser also described his "good faith" belief as to what BMO Harris witnesses would testify to regarding the 2007 loan, as well as the internal investigation.

---

[4] The court also pointed out that Lesser's counteraffidavit did not redact personal identifying information, including social security numbers, from the documents attached thereto. On December 14, 2021, Lesser filed a "Revised Affidavit" in order to redact such information.

¶ 50    Following briefing, the trial court denied the motion to reconsider on February 15, 2022. In making its ruling, it found the motion presented "no new evidence", and there was "no asserted error in the Court's application of the facts to the law."

¶ 51    A judicial sale for the property was held on March 2, 2022, at which time U.S. Bank purchased the property for $1.25 million. U.S. Bank moved to approve the sale, and the trial court granted the motion on April 27, 2022.

¶ 52    Lesser filed a timely notice of appeal, indicating that he appealed from the December 2021 order granting summary judgment, the denial of his motion to reconsider, and the order approving the judicial sale.

¶ 53    On April 27, 2022, Lesser filed in the trial court an "emergency motion to stay pending appeal." At a hearing on May 9, 2022, the trial court denied that motion. In doing so, it remarked to Lesser: "You have been living [at the property] for free for 12 years. You're not even on the note. You acknowledge this yourself by saying you're not the borrower. *** Reading through your brief, the defense that you assert has nothing to do with you, but with your ex-wife and co-defendant Elizabeth Weiner."

¶ 54    After this appeal was docketed, Lesser (acting *pro se*) filed numerous motions in this court. In May 2022, he filed two emergency motions to stay pending appeal, which were denied in June 2022. On June 17, 2022, he filed a third motion to stay, which was denied on June 27, 2022. The record on appeal was filed on July 13, 2022. In September 2022, Lesser filed a "motion regarding supplemental record and for extension of time" to file his opening brief. After this court directed him to file a status report, the motion was ultimately denied in November 2022. On November 4, 2022, he filed a "motion to supplement record and for other relief", which was denied. In December 2022, he filed an "emergency motion" to supplement the record and also requested that

this court enter an order stating that omissions in the record due to this court's denial of his prior requests to supplement "shall not be construed against" him. We denied that motion on November 15, 2022. The appeal has now been fully briefed.

¶ 55                                    ANALYSIS

¶ 56        On appeal, Lesser makes a number of related arguments challenging the grant of summary judgment and denial of his motion to reconsider. Notably, he does not challenge U.S. Bank's standing or whether there was, in fact, a payment default under the loan and mortgage. Rather, he claims that U.S. Bank failed to meet its burden to show that there is no genuine issue of material fact regarding his affirmative defenses. That is, he maintains that U.S. Bank is not entitled to summary judgment unless it is "clear and free from doubt that the fraudulent scheme did not occur." That is, he stakes his appeal on the existence of an issue of fact pertaining to the affirmative defenses, which he claims were supported by his counteraffidavit and the exhibits thereto. Lesser urges that in granting summary judgment, the trial court improperly disregarded his counteraffidavit and failed to adjudicate his affirmative defenses.

¶ 57        With respect to denial of his motion to reconsider, Lesser similarly faults the trial court for giving "very short shrift" to the supporting "Affidavit 2", which he claims was a "better conforming affidavit" that corrected any shortcomings of the counteraffidavit. He suggests that "Affidavit 2" made a "strong showing" of the fraudulent scheme and constituted "new evidence" that could preclude summary judgment. He thus asserts that the trial court abused its discretion when it denied his motion to reconsider.

¶ 58        For the following reasons, we find that U.S. Bank met its *prima facie* case for foreclosure, after which the burden shifted to Lesser to raise a genuine issue of material fact regarding his affirmative defenses. We conclude he did not do so, especially given the deficiencies in the

counteraffidavit and his failure to lay a foundation for documents attached thereto. Thus, summary judgment was properly entered in favor of U.S. Bank. We also conclude that Lesser's motion to reconsider did not correct these deficiencies and otherwise lacked merit. Thus, we affirm.

¶ 59 Summary Judgment Standard of Review

¶ 60 Summary judgment is proper when 'the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2022). "A genuine issue of fact exists where the material relevant facts in the case are disputed, or where reasonable persons could draw different inferences and conclusions from undisputed facts." *PNC Bank, Nat'l Ass'n v. Zubel*, 2014 IL App (1st) 130976, ¶ 13.

¶ 61 "Although courts have deemed summary judgment a 'drastic means of disposing of litigation' (*Purtill v. Hess*, 111 Ill. 2d 229, 240 (1986), it is nonetheless an appropriate mechanism to employ *** when the moving party's right to a judgment in its favor is clear and free from doubt." *Zubel*, 2014 IL App (1st) 130976, ¶ 13. "To survive a motion for summary judgment, the nonmoving party need not prove her case" but "must present some evidentiary facts that would arguably entitle her to judgment. [Citations.]" *Id.*

¶ 62 A trial court's ruling on a motion for summary judgment is subject to *de novo* review, meaning the judgment may be affirmed based on any basis found in the record. *Id.* In other words, "the reviewing court does not need to defer to the trial court's judgment or reasoning." *Bank of America, N.A. v. Adeyiga*, 2014 IL App (1st) 131252, ¶ 56. *De novo* review "is completely independent of the trial court's decision" and "means that the reviewing court performs the same analysis that a trial judge would perform." *Id.*

¶ 63 U.S. Bank Established a *Prima Facie* Case for Foreclosure, Shifting the Burden to Lesser

¶ 64        Under Illinois law, "a mortgagee may foreclose its interest in real property upon 'either the debt's maturity or a default of a condition in the instrument.' " *Zubel*, 2014 IL App (1st) 130976, ¶ 18 (quoting *Heritage Pullman Bank v. American National Bank & Trust Co. of Chicago*, 164 Ill. App 3d 680, 685 (1987)). A bank establishes a *prima facie* case for foreclosure with the introduction of the mortgage and note, after which the burden of proof shifts to the borrower to prove any applicable affirmative defense. See *Zubel*, 2014 IL App (1st) 130976, ¶ 18. "The mere fact that a copy of the note is attached to the complaint is itself *prima facie* evidence that the plaintiff owns the note." *Parkway Bank and Trust Co. v. Korzen*, 2013 IL App (1st) 130380, ¶ 24.

¶ 65        Here, there is no dispute that U.S. Bank established a *prima facie* case for foreclosure. Copies of the subject note (executed by Wiener) and mortgage (executed by Lesser and Wiener) were attached to the complaint. Lesser has never disputed their authenticity. Lesser's answer did not explicitly deny that the complaint attached an accurate copy of the mortgage and note. See *Parkway Bank and Trust Co. v. Korzen*, 2013 IL App (1st) 130380, ¶ 37 (an allegation not explicitly denied is admitted unless the party states that it lacks knowledge of the matter sufficient to form a belief and supports this statement with an affidavit). Thus, Lesser admitted their authenticity. See *id*, ¶¶ 36-38 (foreclosure defendants' pleading that "they lacked knowledge sufficient to answer" allegations functioned as admissions that established the authenticity of the notes and mortgage.)

¶ 66        Further, whereas Lesser's response to the motion for summary judgment disputed whether U.S. Bank was the current holder of the note, the trial court correctly noted that Lesser did not plead standing as an affirmative defense. See *Amos Financial, LLC v. Szydlowski*, 2022 IL App (1st) 210046, ¶ 44 ("lack of standing is an affirmative defense that must be pleaded and proven by the defendant"). In any event, Lesser's opening brief raises no argument as to standing, which

forfeits the issue. Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020) ("Points not argued are forfeited and shall not be raised in the reply brief, in oral argument or on petition for rehearing.")

¶ 67    Notably, Lesser's briefing repeatedly urges that it was U.S. Bank's burden, as movant, to show that it was "free from doubt" that the alleged fraudulent conduct underlying Lesser's affirmative defenses did not occur. This is an incorrect statement of the law, as it ignores the burden of a non-movant after the movant makes a *prima facie* showing of its entitlement to foreclosure. That is, after U.S. Bank established its *prima facie* case, the burden shifted to Lesser to "present evidence showing a genuine issue of material fact or that the moving party [U.S. Bank] was not entitled to judgment as a matter of law." *Wolff v. Bethany North Suburban Group*, 2021 IL App (1st) 191858, ¶ 29. It became Lesser's burden to show the existence of a material issue of fact with respect to one or more of his affirmative defenses. *Zubel*, 2014 IL App (1st) 130976, ¶ 18.  In other words, to avoid summary judgment he needed to present a  "factual basis that would arguably entitle [him] to a judgment." *Adeyiga*, 2014 IL App (1st) 131252, ¶ 54.  Pleadings and argument alone are insufficient to avoid summary judgment. *Triple R Development, LLC v. Golfview Apartments, I, L.P.*, 2012 IL App (4th) 100956, ¶ 16. ("The nonmovant may not simply rely on his pleadings to raise issue of material fact.").

¶ 68    We turn to assess whether Lesser raised a genuine issue of triable fact pertaining to his affirmative defenses. We find he did not.

¶ 69    <u>Lesser Cannot Rely on Contractual Defenses to the Note That He Was Not Party To</u>

¶ 70    As a threshold issue, we note our agreement with U.S. Bank's position in the trial court that, because Lesser was not a party to the note, he could not rely on contractual defenses to that note. However, we find he did have standing to assert contractual defenses to the mortgage (to which he was a party).

¶ 71     Lesser pleaded five affirmative defenses: fraudulent inducement, unclean hands, estoppel, illegality, and mistake of fact. Each of the five affirmative defenses alleged that the original lender (Harris) made fraudulent misrepresentations in connection with execution of the loan by Wiener and execution of the mortgage executed by both Wiener and Lesser. That is, all defenses stem from the same core allegations that Harris fraudulently altered Wiener's income and employment information on loan application documents in order to induce Wiener to sign the note (to which *Lesser was not a party*) and to induce Lesser to sign the mortgage (to which Lesser was a party). Each of the affirmative defenses alleged that Lesser relied on misrepresentations or nondisclosures related to the loan application to execute the mortgage.

¶ 72     The trial court apparently believed that Lesser could not rely on these affirmative defenses, insofar as the alleged fraudulent statements concerned a loan to which Wiener, but not Lesser, was a party. This is evidenced by the trial court's comments at the May 2022 hearing that Lesser was "not even on the note" and the "defense that you assert has nothing to do with you, but with your ex-wife and co-defendant Elizabeth Wiener.'"

¶ 73     The parties' briefs do not devote much effort to discussing whether Lesser's non-party status on the note affected his standing to assert these affirmative defenses. Lesser does not cite any case indicating that a mortgagor may avoid foreclosure by asserting, as affirmative defenses, contract defenses to enforcement of a note that he was not party to.  Yet, he argues "a third-party pledge of collateral via a real estate mortgage is a contract" such that he as "co-mortgagor has the right to assert well recognized contract defenses."  He otherwise makes policy arguments as to why a mortgagor, as a "credit enhancer," should be able to assert the same contractual defenses as the borrower on the note.

¶ 74    We recognize that "a mortgage and an accompanying promissory note securing the mortgage constitute separate contracts." *LP XXVI, LLC. v. Goldstein*, 349 Ill. App. 3d 237, 241 (2004). Lesser has not identified a case holding that a mortgagor who was *not* party to the note may avoid foreclosure based on defenses to enforcement of the note. Our precedent supports the proposition that defenses to enforcement of a contract may only be asserted by a party to the contract. See, e.g. *Jordan v. Knafel,* 378 Ill. App. 3d 219, 229 (2007) ("Fraud in the inducement of a contract is a defense that renders the contract voidable *at the election of the injured party*."); *Tower Investors, LLC v. 111 East Chestnut Consultants, Inc.*, 371 Ill. App. 3d 1019, 1030 (2007) ("Fraud in the inducement of a contract is a defect which renders the contract voidable *at the election of the innocent obligor.*" (Emphasis added.))  In this case, Lesser was not a "party" to or an "obligor" under the loan. However, he was a party to the mortgage.

¶ 75    Lesser has not cited any authority or offered any persuasive reason why he can stand in the shoes of the party to the underlying loan (Wiener), to assert affirmative defenses to that contract. Thus, we conclude he does not have standing to assert defenses based on unenforceability of the note. For instance, he could not defend against the mortgage by alleging that the note was unenforceable because Wiener was fraudulently induced into signing it. However, review of the affirmative defenses shows that Lesser simultaneously pleaded that he personally relied on Harris's misrepresentations or omissions to execute the mortgage at issue. Lesser had standing to plead contractual defenses to the mortgage, to which he was a party.

¶ 76    Regardless of whether the trial court based its entry of summary judgment on this particular issue, we keep in mind that we "review only the court's ultimate judgment, not its reasoning in support of that judgment." *Jarosz v. Buona Companies, LLC*, 2022 IL App (1st) 210181, ¶ 29 (citing *Makowski v. City of Naperville*, 249 Ill. App. 3d  110, 115 (1993)). That is, "we may affirm

the trial court's grant of summary judgment on any ground appearing from the record." *Catom Trucking, Inc. v. City of Chicago*, 2011 IL App (1st) 101146, ¶ 9 (quoting *Fan v. Auster Co*, 389 Ill. App. 3d 633, 648 (2009)). As discussed below, we independently conclude that Lesser did not submit evidence raising a triable issue of fact regarding his affirmative defenses, which independently warranted entry of summary judgment in favor of U.S. Bank.

¶ 77          <u>Lesser's Counteraffidavit Did Not Meet His Burden to Raise a Material Issue of Fact</u>

¶ 78          Lesser faults the trial court for disregarding his counteraffidavit and the exhibits thereto, which he claim establish the fraudulent conduct underlying his affirmative defenses. However, our independent review of that submission leads us to find that it did not comply with Supreme Court Rule 191(a) and was insufficient to avoid summary judgment. Ill. S. Ct. R. 191(a) (eff. Jan. 4, 2013). That is, Lesser did not submit sufficient evidence to create a triable issue of fact regarding the allegations of fraud underpinning his affirmative defenses. This is so, considering: (1) the failure to attach any statement or testimony by Wiener corroborating the allegations of fraud, (2) the failure to attach testimony by any BMO witness, and, (3) perhaps most important, the failure to lay any foundation for the BMO Harris records attached thereto. As a result, the affidavit essentially consisted of Lesser's personal knowledge and his conclusory beliefs about the alleged fraudulent scheme, without corroborating evidence.

¶ 79          Moreover, Lesser failed to file in the trial court an affidavit pursuant to Rule 191(b) specifying what discovery he needed to oppose summary judgment and seeking an order to compel such discovery. Ill. S. Ct. 191(b) (eff. Jan. 4 2013). Nor does Lesser appeal any particular discovery order by the trial court. Accordingly, Lesser cannot simply rely on BMO Harris' alleged non-compliance with his discovery requests to avoid summary judgment.

¶ 80　　　　Affidavits submitted in connection with summary judgment proceedings are governed by Illinois Supreme Court Rule 191. *Avdic*, 2014 IL App (1st) 121759, ¶ 21. Rule 191(a) provides, in relevant part:

> "Affidavits in support of and in opposition to a motion for summary judgment under section 2-1005 of the Code of Civil Procedure *** shall be made on the personal knowledge of the affiants; shall set forth with particularity the facts upon which the claim, counterclaim, or defense is based; shall have attached thereto sworn or certified copies of all documents upon which the affiant relies; *shall not consist of conclusions but of facts admissible in evidence*; and shall affirmatively show that the affiant, if sworn as a witness, can testify competent thereto. *If all of the facts to be shown are not within the personal knowledge of one person, two or more affidavits shall be used*."(Emphases added.) (Ill. S. Ct. R. 191(a), eff. Jan. 4, 2013).

¶ 81　　　　A Rule 191(a) "affidavit is actually a substitute for testimony taken in open court and should meet the same requisites as competent testimony. [Citation.] The circuit court may not consider evidence that would be inadmissible at trial when assessing a motion for summary judgment." *Avdic*, 2014 IL App (1st) 121759, ¶ 22.

¶ 82　　　　Documents attached to a Rule 191(a) affidavit may be admissible under the business records exception to the general rule exclusion hearsay if the proponent "lay[s] a proper foundation by showing that the records were 'made (1) in the regular course of business, and (2) at or near the time of the even or occurrence." *Avdic*, 2014 IL App (1st) 121759, ¶ 23. Similarly, Illinois Rule

of Evidence 803(6) permits admission of "records of regularly conducted activity" if such record is "made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record or data compilation, *all as shown by the testimony of the custodian or other qualified witness*, or by certification that complies with Rule 902(11) * * *." Ill. R. Ev. 803(6) (Jan. 25, 2023)(Emphasis added).

¶ 83        Significantly, Rule 191(b) allows a party to seek relief from the trial court to allow it to obtain necessary discovery to support or oppose summary judgment:

> "If the affidavit of either party contains a statement that any of the material facts which ought to appear in the affidavit are known only to persons whose affidavits affiant is unable to procure by reason of hostility or otherwise, naming the persons and showing why their affidavit cannot be procured and what affiant believes they would testify to if sworn, with his reasons for his belief, the court may make any order that may be just, either granting or refusing the motion, or granting a continuance to permit affidavits to be obtained, or for submitting interrogatories to or taking the depositions of any of the persons so named, or for producing documents in the possession of those persons or furnishing sworn copies thereof." Ill. S. Ct. R. 191(b) (eff. Jan. 4, 2013).

Significantly, "[p]arties who fail to file Rule 191(b) affidavits cannot complain that the 'discovery process was insufficient or limited.' " *Parkway Bank & Trust*, 2013 IL App (1st) 130380, ¶ 48 (quoting *Kane v. Motorola, Inc.*, 335 Ill. App 3d 214, 225)); see also *Avdic*, 2014 IL App (1st)

121759, ¶ 39 (foreclosure defendant could not avoid summary judgment by contending he was entitled to take deposition of plaintiff bank's affiant, where "Avdic did not file a Rule 191(b) affidavit to explain why he needed Armstrong's deposition to oppose the motion for summary judgment and requesting that the court grant a continuance for the taking of the deposition.").

¶ 84    With these authorities in mind, we find that Lesser's counteraffidavit and the documents attached thereto did not raise a genuine issue of material fact regarding the viability of his affirmative defenses. This is true for multiple reasons.

¶ 85    First, Lesser failed to submit any affidavit or testimony from Wiener corroborating the central allegations of the affirmative defenses—namely, that BMO Harris inserted false information about Wiener's income and employment into loan documents and fraudulently induced her to execute the loan documents at the August 2007 closing. His affirmative defenses largely depend on *Wiener* being fraudulently induced to enter into the loan. However, Lesser did not provide any affidavit or testimony from Wiener pertaining to any element of fraudulent inducement. See *Jordan v. Knafel*, 378 Ill. App. 3d 219, 229 ("In order for a representation to constitute fraud that would permit a court to set aside a contract, the party seeking such relief must establish that the representation was: (1) one of material fact; (2) made for the purpose of inducing the other party to act; (3) known to be false by the maker, or not actually believed by him on reasonable grounds to be true, but reasonably believed to be true by the other party; and (4) was relied upon by the other party to his detriment." (citing *Tower Investors, LLC v. 111 East Chestnut Consultants, Inc.*, 371 Ill. App. 3d 1019, 1030 (2007)). That is, there is no evidence from Wiener attesting that the information about her income and employment was, in fact, inaccurate. Perhaps more important, there is no testimony from Wiener that she reasonably relied on any specific misrepresentation or nondisclosure to sign the loan documents.

¶ 86    In this regard, we note that Lesser's counteraffidavit does not indicate any reason why he could not obtain any testimony from Wiener to support the allegations of his affirmative defenses. Nor did Lesser file a Rule 191(b) affidavit in the trial court suggesting that he could not procure Wiener's affidavit "by reason of hostility or otherwise" or stating "what [Lesser] believed [Wiener] would testify to if sworn, with his reasons for his belief." Ill. S. Ct. R. 191(b) (Jan. 4, 2013).

¶ 87    Similarly, Lesser's counteraffidavit did not attach any affidavit or other form of testimony from the loan officer who allegedly processed the loan, or from any other employee of BMO Harris, whose alleged fraud is the basis for the affirmative defenses. Lesser's counteraffidavit complained that BMO Harris "refused to comply with Lesser's "valid discovery requests," including a subpoena for "appropriate deponents." Lesser averred "[o]n information and belief" that had BMO Harris complied, the requested documents and deponents would establish the truth of his allegations of fraudulent conduct. However, Lesser's statements "on information and belief" as to what discovery would establish do not constitute the sort of particularized statement required by Rule 191(a), which states that affidavits "shall not consist of conclusions but of facts admissible in evidence." Ill. S. Ct. R. 191(a) (eff. Jan. 4, 2013). Further, Lesser did not file with the trial court a Rule 191(b) affidavit naming any BMO Harris witnesses and "showing why their affidavits cannot be procured and what [Lesser] believes they would testify to if sworn." Ill. S. Ct. R. 191(b) (eff. Jan. 4, 2013). Had he done so, the trial court would have had an opportunity (before ruling on the summary judgment motion) to make an order "permit[ting] affidavits to be obtained, or for submitting interrogatories to or taking the deposition of any of the persons so named, or for producing documents in the possession of those persons." *Id*. Having failed to do, so Lesser cannot avoid summary judgment by simply blaming a lack of supporting evidence on BMO Harris's refusal to comply with his discovery requests. See *Parkway Bank & Trust*, 2013 IL App (1st)

130380, ¶ 48 (parties who fail to file Rule 191(b) affidavits cannot complain that the discovery process was insufficient or limited).

¶ 88   We also find that Lesser's counteraffidavit did not lay a proper evidentiary foundation for documents attached thereto that are central to his affirmative defenses—namely, the loan application documents allegedly generated by BMO Harris containing false information about Wiener's income and employment. Lesser's counteraffidavit did not show that these documents were made in the regular course of BMO's business, or that they otherwise were admissible under Illinois Rule of Evidence 803(6) or Supreme Court Rule 236(a). Lesser did not provide any affidavit or certification from any "custodian or other qualified witness" who could testify that such records met the requirements of Rule 803(6). Ill. R. Ev. 803(6) (eff. Jan. 25, 2023).

¶ 89   The same is true with respect to the exhibit Lesser referred to as an "Investigatory Report", which consists of four pages of untitled documents purportedly referencing BMO Harris's internal investigation into the loan. The counteraffidavit offers no basis on which to conclude that such writings were made in the regular course of business or that it was the regular course of business to make such records. See Ill. S. C. R. 236(a). Moreover, even assuming Lesser had set forth a proper evidentiary foundation for those documents, they would hardly corroborate Lesser's affirmative defenses. Rather, they reflect BMO Harris's conclusion that, although Wiener's income and employment information were changed, such information "appears to have been altered by Brian Jessen *with help from David Lesser.*" (Emphasis added.).

¶ 90   For the foregoing reasons, we determine that Lesser's counteraffidavit and the documents attached thereto failed to create a genuine issue of fact as to the validity of his affirmative defenses. That is, he did not "present a factual basis that would arguably entitle [Lesser] to a judgment." *Adeyiga*, 2014 IL App (1st) 131252 We also reiterate that Lesser's counteraffidavit did not dispute

that there was a payment default under the loan and mortgage. And on appeal, Lesser does not dispute that U.S. Bank established a *prima facie* case. Accordingly, we conclude that the trial court properly entered summary judgment.

¶ 91    The Motion to Reconsider Was Properly Denied

¶ 92    Our analysis does not end there, because Lesser additionally appeals the trial court's denial of his motion to reconsider. Lesser's opening brief suggests that in denying the motion to reconsider, the trial court abused its discretion when it "completely ignore[d]" the new affidavit submitted in support of that motion ("Affidavit 2"). He avers that Affidavit 2 was "new evidence" that made a strong showing of the alleged fraudulent scheme underlying his affirmative defenses.

¶ 93    "The purpose of a motion to reconsider is to bring to the trial court's attention a change in the law, an error in the trial court's previous application of existing law, or newly discovered evidence that was not available at the time of the prior hearing or decision. [Citations.]" *Horlacher v. Cohen*, 2017 IL App (1st) 162712, ¶ 79.  If a motion to reconsider is based on a "purported misapplication of existing law, our standard of review is *de novo*." *Id.*  ¶ 80. If the motion to reconsider is "based on new evidence, facts, or legal theories not presented in the prior proceedings, our standard of review is abuse of discretion." *Id.*  Under either standard of review, we conclude the motion to reconsider was properly denied.

¶ 94    The record reflects that the motion to vacate and the supporting "Affidavit 2" did not attach any "new," previously unavailable evidence to support Lesser's affirmative defenses. See *id.* ¶ 82 (in civil cases, "newly discovered evidence has been defined as evidence that was not available at the time of the prior order or hearing. [Citations.]"). Rather, Lesser reiterated BMO Harris' "hostility" in withholding discovery, asserted that Lesser's averments were sufficient to authenticate documents produced by BMO Harris, and offered his "good faith" beliefs that the

documents support his claims of a fraudulent scheme. The exhibits to "Affidavit 2" consisted of documents previously submitted as exhibits to the counteraffidavit, but Lesser included new statements complaining of BMO Harris's discovery responses. Citing Rule 191(b), he claimed BMO Harris intentionally impaired his ability to procure evidence and identify deponents. Lesser also added new averments about his "good faith" belief as to the admissibility of the documents, what the documents showed, and what BMO Harris deponents would testify to. For example, Lesser asserted he "believe[d] in good faith that the Investigatory Report is a copy of a genuine BMO business record produced by BMO in the ordinary course of its business." Lesser also stated his belief that BMO Harris employees, if deposed, would testify that any false information contained in the loan application was inserted by BMO Harris officers or employees, and that they would testify there was no evidence that Lesser assisted in altering information.

¶ 95        In this manner, the motion to vacate and "Affidavit 2" apparently attempted to correct the shortcomings of Lesser's counteraffidavit, including his failure to lay an adequate evidentiary foundation for the BMO Harris records he relied upon. However, Lesser's mere averment that BMO Harris produced the documents in discovery was not sufficient to authenticate them as business records under Rule 803(6) or Supreme Court Rule 236, as Lesser lacked any personal knowledge as to whether they were generated or kept in the regular course of BMO Harris's business. Further, Lesser's claims of BMO Harris' "hostility" were unavailing, since he never filed a Rule 191(b) affidavit.  Moreover, Lesser could not correct such deficiencies by offering speculative statements about his "good faith" belief about what BMO Harris witnesses would testify to, had they been deposed. Accordingly, we affirm the denial of the motion to vacate.

¶ 96        We note that our decision should not be construed as condoning BMO Harris' level of cooperation (or lack thereof) with Lesser's discovery requests in this lengthy litigation.  The record

raises some questions, such as why BMO Harris did not produce a deponent or produce additional documents concerning any investigation into the approval of the loan in question. Nevertheless, the case law is clear that because he did not first seek relief through a Rule 191(b) affidavit, Lesser cannot now avoid summary judgment by merely pointing to alleged deficiencies in BMO Harris' discovery responses, or speculating as to what additional discovery might reveal. See *Avdic*, 2014 IL App (1st) 121759, ¶ 39; *Parkway Bank & Trust*, 2013 IL App (1st) 130380, ¶ 48. Moreover, we again note that Lesser did not appeal any discovery ruling. In turn, he was left to rely on the record before us, including his affidavits, to demonstrate a genuine issue of fact concerning his affirmative defenses. We agree with the trial court that he did not do so.

¶ 97 Before we conclude, we note that although Lesser's notice of appeal referenced the order approving the judicial sale of the property to U.S. Bank, Lesser raises no argument with respect to that order.

¶ 98 In summary, we find that the trial court properly granted summary judgment where (1) U.S. Bank established a *prima facie* entitlement to foreclosure and (2) Lesser failed to meet his corresponding burden to raise an issue of fact supporting his affirmative defenses. Further, his motion to reconsider was properly denied.

¶ 99 CONCLUSION

¶ 100 For the foregoing reasons, we affirm the circuit court orders granting summary U.S. Bank's motion for summary judgment, denying the motion to reconsider, and confirming the judicial sale of the property.

¶ 101 Affirmed.